GEORGE F. PERKINS et al.

*v.*

TRINITY REALTY COMPANY.

[Decided June 14th, 1905.]

1. A mortgage given as part of a business transaction can be fore-closed only when it secures a debt.

2. Where a debt was past due, and the creditor demanded payment or security, whereupon the debtor tendered and the creditor accepted a mortgage, executed by a corporation on its property, but did not release the debtor or expressly extend the time of payment, the mortgage is sup-ported by a consideration.

3. In an action on a contract made in a foreign state, the defendant can claim the benefit of the law of that state only by pleading it.

4. Accommodation notes given by a business corporation are not valid as against corporate creditors or dissenting stockholders.

5. A corporation is estopped to plead that accommodation notes given by it with the consent of all the stockholders were *ultra vires*, or that a mortgage similarly given to secure such notes was *ultra vires*.

---

Heard on bill, answer and agreed state of facts.

*Messrs. Tennant & Haight,* for the complainants.

*Mr. Frank Durand,* for the defendant.     •

GARRISON, V. C.

This is a bill to foreclose a mortgage. The mortgage was given by the Trinity Realty Company to George F. Perkins and others on the 28th day of February, 1903. It was given to secure the payment of seven promissory notes, aggregating $5,000, payable at intervals of one month each, with provision that the non-payment of one should make all due.

Three of these notes, aggregating $1,500, were subsequently paid to the complainants by a corporation named The Household Ledger Publishing Company. Default was then made.

The complainants now claim $3,500, with interest, as due upon this mortgage.

The defendant answers that the mortgage was without consideration, and that under the law of New York, where the defendant company was incorporated and where the mortgage was made, it was *ultra vires* the corporation, and that the mortgage is null and void and unenforceable.

I will deal first with the question of the defence based upon the want of consideration.

The cases in our state upon this subject leave it, I think, in a confused condition.

It will be found that the court of chancery, in dealing with the question of the defence of want of consideration, has held that "a bond and mortgage * * * is good if it is shown that none [consideration] was given. And neither courts of law or courts of equity will allow the consideration to be inquired into

for the sake of declaring the instrument void for want of consideration, but they will for the purpose of ascertaining what is due upon it." *Farnum* v. *Burnett, 21 N. J. Eq. (6 C. E. Gr.) 87* (at *p. 89*) *(Chancellor Zabriskie, 1870)* ; *Shotwell* v. *Shotwell, 24 N. J. Eq. (9 C. E. Gr.) 378* (at *p. 385*) *(Chancellor Runyon, 1874*).

It will be observed that these decisions are prior to the act of April 6th, 1878, concerning evidence in respect to sealed instruments and permitting oral testimony to be given with respect to the consideration thereof.

But after that act was passed, the court of chancery held : "It cannot be doubted that even now a valid mortgage may be given where no valuable consideration exists. Otherwise, the absolute control of the owner over his property is taken away, for he would not be permitted to give it away in his lifetime by deed. The mere fact that there was no consideration would not now render the mortgage invalid.

"A mortgage may be sustained as against all except creditors whose claims existed at the time of giving it, although it was intended merely as a gift, and, when executed and delivered, it is as valid as if it were based upon a full consideration, and it is not open to the objection that it is a voluntary executory agreement, but it may be enforced according to its terms as an executed, conditional transfer of the real estate mortgaged. *Brooks* v. *Dalrymple, 12 Allen 102; Bucklin* v. *Bucklin, 1 Abb. App. Dec. 242; Jones Mort. § 614." Campbell* v. *Tompkins, 32 N. J. Eq. (5 Stew.) 170* (at *p. 172*) *(Chancellor Runyon, 1880)* ; *affirmed, 33 N. J. Eq. (6 Stew.) 362.*

And in this same case the chancellor speaks of the validity of a "voluntary mortgage" by a wife.

Our courts, however, hold that a mortgage is to be regarded as a mere incident or security of the debt. *Shields* v. *Lozear, 34 N. J. Law (5 Vr.) 496* (at *p. 503*) *(Court of Errors and Appeals, 1869)* ; *Blue* v. *Everett, 56 N. J. Eq. (11 Dick.) 455* (at *p. 458*) *(Court of Errors and Appeals, 1897*).

In the case of *Farnum* v. *Burnett, supra,* it will be seen that a debt became due to one who had advanced money upon a bond,

to secure which the mortgage in question was given, and in numerous other cases which have followed this case, and which cite it, the same or similar conditions will be found to exist. *Brown* v. *Kahnweiler, 28 N. J. Eq. (1 Stew.) 313 (Chancellor Runyon, 1877)* ; *Wood* v. *Condit, 34 N. J. Eq. (7 Stew.) 434 (Chancellor Runyon, 1881)* ; *Sweeney* v. *Williams, 36 N. J. Eq. (9 Stew.) 627 (Court of Errors and Appeals, 1883)*.

I shall not consider the question as to whether or not a mortgage given to secure a voluntary bond or note, which latter was intended as a gift, would be sustained or not, since that question is not involved in this suit, and it is not necessary to deal with it.

I shall only deal with that aspect of the question which concerns the foreclosure of mortgages given to secure bonds or notes where there is no evidence of any donative purpose in the giving of the bond or note, but the transaction must be viewed as one of contract solely.

In such cases I think that the mortgage may only be foreclosed or rights under it enforced where there was a debt to secure which it was given.

Of course, the debt need not have been one due from the mortgagor. One owning property, either personal or real, may pledge it for the payment of the debt of another person.

If there be no debt, then there is no right to enforce the mortgage, and the matter of consideration may be inquired into for the purpose of showing that there was no debt.

Such confusion as exists with respect to the right to plead and prove no consideration arises, I think, out of the failure to distinguish between the mortgage and the debt which the mortgage is given to secure.

There need not be proven, and there need not exist, as I understand it, any consideration between the mortgagor and the mortgagee for the defeasible conveyance manifested by the mortgage itself. The owner of the land may, as has been before stated, make a defeasible conveyance of his property, the condition of the defeasance being that upon payment of a certain debt the conveyance is void. But this fact does not relieve one

who seeks to enforce such a defeasible conveyance from the necessity of showing that there was a debt, to secure which the mortgage was given.

The mortgage itself is an executed conveyance, defeasible upon the carrying out of an executory contract. This executory contract is subject to all the laws applicable to contracts, and must, of course, be supported by consideration.

That consideration need not move to the mortgagor, and the debt to secure which the mortgage is given may be the debt of another person.

But this does not militate against the necessity of finding, in each instance (excepting where the question is one of gift), that there was an executory contract, upon consideration, to secure which the executed defeasible conveyance was made.

In the case of *Bliss* v. *Cronk, 62 N. J. Eq. (17 Dick.) 496* (*Vice-Chancellor Pitney, 1901*), the court, speaking with reference to a mortgage that contained within itself the promise to pay, said (at *p. 499*) :

"The deed has a dual character—*first,* it contains a covenant by Mrs. Cronk to pay a sum of money to the complainants, stated to be a pre-existing debt due from her to them; *second,* a conveyance of land to secure that debt.

"The first is an executory contract by a married woman, and the second an executed conveyance whose validity and liability to be enforced depends upon the enforceability of the executory contract."

It is held in New York that the court will inquire into the consideration of a mortgage sought to be foreclosed, and that "it is the debt which gives the mortgage vitality as a charge upon the land, and generally where there is no debt or obligation there is no mortgage." *Baird* v. *Baird, 145 N. Y. 659* (at *p. 664*).

*Jones on Mortgages (3d ed.),* § 610, says: "A mortgage, like every other contract, must be founded upon a valuable consideration." And in section 612 he says: "Want of consideration, or the failure of it, is a good defence to an action upon a mortgage."

Our own courts, as has been heretofore shown, have always held that they would inquire into the consideration for the purpose of ascertaining what is due upon the mortgage, and it seems to me that such inquiry must necessarily lead to the same end, because if there was no debt there is nothing due.

I shall not pursue this subject further, because I think it sufficiently appears that the matter of the consideration of the executory contract which this mortgage was given to secure must be inquired into in this case.

The agreed state of facts with respect to the matter of consideration is as follows:

"1. That the Every Month Publishing Company, a corporation of the State of New York, was indebted prior to February, 1903, to the complainants in the sum of five thousand dollars, some of said indebtedness being past due, and about that time the complainants insisted that said Every Month Publishing Company make immediate payment of its past due indebtedness or give security for said debt; the publishing company then offered as security the mortgage in question, which the complainants agreed to accept. * * *

"6. That the Every Month Publishing Company was not, by the giving of said mortgage, released of its debt to the complainants."

The complainants contend that it sufficiently appears in this case that they extended forbearance to their debtor in consideration of the contract by the defendant to give security for the debt.

It will be observed that there is no express agreement by the complainants to extend the time of the payment of the debt due to the complainants by the Every Month Publishing Company, the original debtor.

If the case were one of novel impression in this state, I should have grave doubt in determining that the facts proven should be held to establish an agreement to forbear. But there is a precedent directly in point, upon facts so nearly similar to those in the case at bar as to be indistinguishable for the purpose of the application of the principle.

In the case of *Hockenbury* ads. *Meyers, 34 N. J. Law (5 Vr.) 346 (Supreme Court, 1870)*, it was held that an agreement to forbear "may be either expressed or inferred from the facts and

circumstances of the case." In that case two men were indebted to Mrs. Meyers, the plaintiff. Their debt was evidenced by a promissory note which was then past due. "The plaintiff threatened prosecution unless security was given," and the defendant signed this overdue promissory note under the names of the original makers. The court, upon this state of facts, held (at *p. 348*): "The natural and fair result of the proof, circumstantial and direct, is that the defendant signed the note as surety in consideration of forbearance to sue upon it, and that such was the agreement between the defendant and the plaintiff."

In the case at bar the agreed state of facts is that the complainants insisted

"that said Every Month Publishing Company make immediate payment for its past due indebtedness or give security for said debt; the publishing company then offered as security the mortgage in question, which the complainants agreed to accept."

It will be observed in the *Hockenbury Case* that since the defendant placed his name on the overdue note under the names of the makers, there was no evidence before the court of any of the terms of the new agreement as to time of extension, whereas, in the case at bar, promissory notes, payable at different intervals, were given, which *a fortiori* should be held to imply an agreement to extend the time of payment of the original debt to the periods named in the notes.

The *Hockenbury Case* is therefore direct authority for the case at bar.

I therefore find that there was consideration for the mortgage.

It now becomes necessary to consider the other defence pleaded, namely, that of *ultra vires*.

The agreed state of facts upon this point shows that the Trinity Realty Company was a corporation of the State of New York, and that at a meeting at which all of the stockholders were present they unanimously voted for and passed the following resolution:

"Whereas, the Every Month Publishing Company, a corporation, is indebted to the firm of Perkins, Goodwin & Co., of the city of New York, in the sum of $5,000, for goods sold and work done between the first day of August, 1902, and the twentieth day of January, 1903;

"Now, therefore, in order to secure the payment of said indebtedness, and as an accommodation to the Every Month Publishing Company,

"*It is Resolved,* That the Trinity Realty Company be and it is hereby empowered and directed to execute and deliver to the said firm of Perkins, Goodwin & Co. its promissory notes, payable to the order of said firm, as follows, viz.: One note for $500, payable August 1, 1903; one for $500, payable September 1, 1903; one for $500, payable October 1, 1903; one for $500, payable November 1, 1903; one for $1,000, payable December 1, 1903; one for $1,000, payable January 1, 1904, and one for $1,000, payable February 1, 1904, all bearing interest at 6 per cent. per annum until paid; and that in order to secure the payment of said notes, the Trinity Realty Company be and it is hereby empowered and directed to execute and deliver to George F. Perkins, J. Fred. Ackerman, Frank Squier and John H. Duffy, partners as Perkins, Goodwin & Co., composing the said firm, its mortgage upon that certain tract of land owned by it and situated at Port au Peck, in the township of Eatontown, county of Monmouth, in the State of New Jersey, subject to the lien of a mortgage for $10,000 now on said land, and that the president of the Trinity Realty Company be and he is hereby directed to execute said notes and mortgages."

I do not deem it necessary in this case to determine whether the validity of this mortgage should depend upon the construction to be placed upon the laws of the State of New York or of the laws of the State of New Jersey. The defendant, in its answer, appeals to the laws of New York as rendering the mortgage invalid, but does not plead the same, as it should have done had it desired to take advantage thereof. *Boehme* v. *Rall,* 51 N. J. Eq. (6 Dick.) 541 (at p. 545) (*Vice-Chancellor Green,* 1893).

But since, for the purpose of this decision, I propose to hold that the mortgage is invalid as against anyone having the right to attack it, I, as stated above, deem it unnecessary to determine by the law of which state the validity thereof should be determined.

It is clear that the notes, to secure which this mortgage was given, were not for any purpose of the defendant company, and were not given in the due course of its business, and were given as an accommodation to a third party. I think, therefore, it is

obvious that the mortgage could not be sustained if attacked by any creditor of the corporation or by any stockholder who did not assent to it. But since it is not shown that there are any creditors, and no question of public policy intervenes, and every stockholder assented to this disposition of the company's property, I find that this mortgage, given for a valuable consideration, should not be declared invalid at the instance of this defendant.

Without attempting to formulate a definition, I think it may be properly said that the doctrine of *ultra vires* is that at the instance of the state where public policy requires it, or at the instance of stockholders or creditors whose rights would otherwise be injuriously affected, corporations will be held powerless to do anything not clearly within the terms of their charters or statutory provisions.

Our courts, however, hold that the plea of *ultra vires* will not avail a corporation with respect to an act for which it has received consideration in any case where the *status quo ante* cannot be restored, and in such cases the corporation is estopped to set up the plea of *ultra vires*. *Camden and Atlantic Railroad Co.* v. *Mays Landing, &c., Railroad Co., 48 N. J. Law (19 Vr.) 530 (Court of Errors and Appeals, 1886)* ; *Breslin* v. *Fries-Breslin Co., 70 N. J. Law (41 Vr.) 274 (Court of Errors and Appeals, 1904).*

And in a case in which no question of public policy is concerned, and therefore the rights of the state or of the public are not involved, and where no creditors exist, and all of the stockholders have assented to the action, I do not see upon what basis the plea of *ultra vires* can be rested.

When the rights of the state, the public and creditors are eliminated, and only the rights of stockholders are involved, the form of the fictional body termed a corporation does not hamper the court in the least in dealing with the rights of the parties. And that which the individuals composing the corporation might do, and will be held to have done among themselves, will be dealt with without regard to the immaterial fact that they were members of a fictional body.

No citation of cases is necessary to establish the well-settled doctrine that courts of equity will disregard the corporate form where justice requires it and its retention is not needed to protect some interest requiring protection.

To permit stockholders of corporations to unanimously make a disposition of the corporate property where no one else's rights are in any way prejudiced, and afterwards to repudiate their action upon the ground that it was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be merely available in aid of fraud.

To hold that under such circumstances those who have unanimously done the act cannot repudiate it is certainly consonant with good morals and fair dealings, and violates no principle which is necessary to the protection of the rights of those concerned in and with corporations.

In cases where stockholders have all assented to corporate action, and no rights of the state or creditors intervene, the doctrine of estoppel is fully applicable, and the plea of *ultra vires* is unavailing. *Breslin* v. *Fries-Breslin Co., supra.*

Text-writers and cases in other jurisdictions are in accord with this principle. *Tayl. Corp.* § 266 *et seq.;* *McCampbell* v. *Fountain Head Railroad Co., 111 Tenn. 55;* *77 S. W. Rep. 1070 (1903);* *Martin* v. *Niagara Falls Paper Mfg. Co., 122 N. Y. 165; Holmes* v. *Willard, 125 N. Y. 75.*

In the suit at bar the complainants were induced to forego their right of immediate action against a third party, their debtor, upon the defendant's giving security for the payment of the debt.

The *status quo ante* cannot be restored, and no one's rights in the corporation are affected save the rights of those who agreed that they should be so affected. The defendant, therefore, has no right to invoke the doctrine of *ultra vires.*

I conclude that the complainants are entitled to a decree, and will so advise.