PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.

---

HENRY KROUSE, trustee, respondent,

*v.*

FRANCIS J. PALMER et al., appellants.

[Decided May 3d, 1918.]

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Foster, who filed the following opinion:

This bill is filed to foreclose a mortgage given by the Development Realty Company to the defendant Palmer, and assigned by him to complainant.

At the conclusion of the hearing and on the brief submitted by counsel for the defendants, it was conceded that

"the fact that the defendant Palmer was the actual owner of all the stock of the Development Realty Company which made the mortgage, destroys the defence set up by the answer of the Development Realty Co., namely, that Palmer was without power to make an assignment which increases the obligations of the company under the mortgage."

The elimination of this contention leaves for determination the question whether there was any consideration for the assignment of the mortgage by Palmer to complainant.

The established facts relating to this inquiry are that complainant and others, for whom he holds the mortgage as trustee, are, or were, directors of the First National Bank of Roselle, and that John M. Walsh was the cashier of the bank. Some time in March, 1913, Walsh, as cashier, without the authority or knowledge of the bank directors, invested $8,000 of the bank's funds in the purchase of participating certificates in the notes of the St. James Company, Inc. The principal and interest of these notes were secured by, and were to be paid in certain installments from rentals received from the St. James building, owned by the company in New York City. When the bank directors and the executive committee learned of this investment which Walsh had made, they refused to ratify it; censured him for making it, and demanded that he reimburse the bank for the amount of the investment or furnish satisfactory security for the same. Walsh, at the time, was unable to do what the directors demanded. While negotiations looking to a settlement with him were pending, the company paid in installments $3,200 on the notes and defaulted on the remainder. The matter finally came to the attention of the bank examiner and the controller of the currency, and as a result of their criticism that the investment was illegal, the directors personally paid the balance due the bank, and did so at the request and on the promise of Walsh that he would secure them and the bank against loss. This he attempted to do by giving his personal note secured by bonds of the Napa Company of California. The directors refused to accept these bonds as collateral and thereupon Walsh and his friends induced the defendant Palmer to assign the mortgage in question to complainant as trustee for the directors.

The liability which the directors assumed at Walsh's request was originally $4,800. This was later reduced to $3,600 by a payment of $1,200, made by the company, and again reduced to the amount now claimed of $3,200 by a payment of $400 made by Walsh. Before the directors settled with the bank and while the investment was under criticism, intimation of criminal prosecutions against Walsh, or of his discharge as cashier, were made by one or more of the directors, and Walsh in order to

repay what the directors claimed he owed the bank, and to prevent his discharge, which he claimed would prevent him obtaining another position, promised in effect that if the directors would act to relieve the bank from any possible loss arising from the investment and himself from the consequence of making the unauthorized use of the bank's money, he would repay them and furnish them with security for any such liability they assumed. Thereupon Palmer, a friend of Walsh, was approached by Walsh and his friends about the matter and informed of the situation; and in order, as he states, to help Walsh out of the trouble with the bank, Palmer assigned the mortgage in question to complainant as trustee, to secure him and his co-directors for any money they paid in settling the bank's claim against Walsh.

Palmer now claims this was not his intention when he made the assignment; that he understood Walsh was in some trouble with the bank and was called upon to pay or secure the payment of money which he owed the bank, and that he intended by the assignment to secure the bank, and 'not the directors, for the money owing by Walsh. Palmer claims he had only the most vague idea of the trouble between Walsh and the directors of the bank. He was suspicious that Walsh might be prosecuted or might be discharged from his position as cashier, and was anxious to help him out of his trouble.

It appears, however, that when Palmer executed the assignment to complainant, he asked for whom Krouse was acting as trustee, and was told that he was acting for himself and other directors of the bank, and he knew that he was giving security for $3,600 due on the St. James loan. I am satisfied, although he does not now recall the matter, that he was fully acquainted with the situation when he made the assignment. To secure Palmer in the matter Walsh assigned to him the Napa Company bonds, and two years later Palmer found they were worthless. On the same day Palmer assigned the mortgage to complainant Walsh also gave complainant, as trustee, his note for $3,600, payable in three months, and at or about this time the directors paid the balance due the bank.

Summarized, the situation presented by these facts is, that Walsh acknowledged he had made an improper and unwarranted use of the bank's funds, and in consequence was obliged to save the bank from loss; that he personally was unable to do so and requested complainant and his co-directors to do it for him, promising to secure them against loss, and to repay them what they had paid on his account; that Palmer, with full knowledge of the situation, furnished this security at Walsh's request and for Walsh's accommodation and benefit, and delivered it to complainant as the promised security for the money paid by him and his co-directors at Walsh's request and for his benefit.

In view of Palmer's knowledge of the facts when he executed the assignment of the mortgage, and of the debt owing by Walsh to the directors at the time for the liability they had assumed and the money they paid at his request to keep him out of trouble, I am satisfied there was an actual valuable consideration for the assignment of the mortgage by Palmer to complainant, although the consideration did not move directly from complainant to Palmer or to the mortgagor, and it was not necessary that it should. *Perkins* v. *Fidelity Realty Co., 69 N. J. Eq. 723; affirmed, 71 N. J. Eq. 304.*

The decree asked for will be advised.

*Mr. Nathan R. Leavitt,* for the respondent.

*Messrs. Edwin B. & Philip Goodell,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.