The complainant files its bill alleging:
First. On December 17th, 1925, it purchased of the Central Corporation certain premises in Atlantic City, New *Page 502 
Jersey, subject to a mortgage then of record in the amount of $50,000, made by one Garr et ux. et al. to George P. Proffatt and Katherine B. Proffatt, dated September 14th, 1923.
Second. That on December 4th, 1925, the Second National Bank of Atlantic City, New Jersey, and Joseph Thompson and Walter Hanstein, trading as Thompson Hanstein, notified the Central Corporation that said mortgage had been assigned by the Proffatts to Isidor Schmeidler on the 9th day of April, 1925, for the purpose of securing to the said Second National Bank the sum of $23,200, and to Thompson Hanstein the sum of $2,000, and that the said notice was turned over to the complainant by the Central Corporation.
Third. That on March 19th, 1926, the Bankers Trust Company of Atlantic City, New Jersey, served notice upon the attorneys of the complainant that said mortgage had been assigned on the 21st day of December, 1925, to said Bankers Trust Company, and demanded of the complainant that it pay the interest due on March 14th, 1926, in the sum of $1,500.
Fourth. That on April 6th, 1926, said Thompson Hanstein, as attorneys for the Second National Bank, served notice on the attorneys of the complainant that the Second National Bank was the owner of the mortgage before mentioned.
Complainant prays for permission to pay the said sum of $1,500 into this court.
The Second National Bank files its statement setting forth the indebtedness by the Proffatts to the Second National Bank and the assignment to Schmeidler, and that the said Schmeidler, on the 5th day of April, 1926, which was the time deemed by him as most advisable, and pursuant to due notice, offered said mortgage at public sale and sold the same, and said mortgage was on that day bought by the said Second National Bank and it was by the said Schmeidler duly assigned to it, and the Second National Bank therefore claims to be the owner of the said mortgage and entitled to the interest due. *Page 503 
The Bankers Trust Company also claimed the ownership of the said mortgage, and that it was entitled to the interest due thereon.
On the 6th day of August, 1926, the interlocutory decree decreeing the complainant to be released was entered.
The brief of defendants Second National Bank and Thompson and Hanstein states: "The legal question which the court expressed and desires to have covered by briefs of the litigants was substantially to the effect that if the Second National Bank and Thompson Hanstein were made whole as to their claims, would the Second National Bank be entitled to hold the same as against the Bankers Trust Company?"
After the hearing, the Second National Bank made a proffer substantially to this effect. An answer was made thereto by the solicitor that "we deem the proposition you submit as no offer of settlement whatever, as it has always been our view that no one can seriously entertain the idea that you, in any event, could retain the full amount of the mortgage." These letters are not, of course, a part of the record, but were filed with the court.
In its brief, the Bankers Trust Company conceded at the outset that the claim of the Bankers Trust Company is no better and rises no higher than that of Mr. and Mrs. Proffatt, their assigns, and so far as the issues herein are concerned, they may be determined exactly as if the controversy were between the Second National Bank and Mr. and Mrs. Proffatt.
For a number of years Proffatt and his wife were doing business in Atlantic City under the name of Guarantee Electric Company. On October 13th, 1922, the Guarantee Electric Company was incorporated and capital stock to the amount of $25,000 was issued to each of the Proffatts. Both before and after the incorporation, the banking business of the Guarantee Electric Company was conducted at the Second National Bank. After the incorporation, the Proffatts disposed of the greater part, if not all, of the stock issued to them.
On November 1st, 1922, the Guarantee Electric Company, *Page 504 
by its directors (Proffatt being one), authorized the borrowing from the Second National Bank the sum of $15,000. A note was discounted and the proceeds thereof placed to the credit of the company. This note was renewed from time to time and payments made thereon, so that it was reduced to the sum of $12,000. Two other notes had been discounted, and on March 25th, 1924, they amounted to $1,500 and $1,250, respectively. On that day, these three notes were consolidated, making an indebtedness of $14,750, and $150 was paid on account and a new note of $14,600 was given. On July 16th, 1924, this note was protested.
At a time when Proffatt was out of the state, the corporation being found insolvent, Judge C.C. Shinn was appointed receiver. A writ of sequestration was issued on February 5th, 1925, upon proceedings instituted by him, whereby all Proffatts' real estate and certain personalty was sequestered.
Mrs. Proffatt sold certain of her stock to one Emerson and one Huber and received a note for the consideration from each of them, which notes were discounted at the Second National Bank. At the time of the assignment hereinafter mentioned, there was due upon one note the sum of $4,200 and upon the other note the sum of $4,400, or a total of $8,600.
The firm of Thompson Hanstein incorporated said company and held twenty shares of the capital stock, which they obtained from Mrs. Proffatt as follows: They charged $1,000 for the incorporation fee and other charges, which amount was paid by the company to Mrs. Proffatt, and she assigned the stock to them to cover that amount, at par. They also paid her $1,000 in cash and received additional stock to that amount.
It is admitted that Thompson Hanstein were and are the solicitors of the Second National Bank, and that they were the solicitors of the Guarantee Electric Company, and had to some extent represented Proffatt.
Sometime prior to April 9th, and after Proffatt's return, he, Proffatt, asked if the firm would represent him in the *Page 505 
sequestration proceedings, and Judge Thompson replied "that he would not discuss the matter unless he agreed to take care of the Second National Bank and Thompson Hanstein." Proffatt then asked if he did that, would they represent him, and the answer was that if he agreed to that, or if he did that, then Judge Thompson would discuss the matter, and not until then, and that since that time Judge Thompson had had no further communication in respect to the matter.
During Proffatt's absence, one Isidor Schmeidler had a power of attorney from him, by reason of which he transacted certain business for Proffatt. After Proffatt's return, he met Schmeidler in his, Schmeidler's office, and arranged for an assignment to him of the mortgage in question. Proffatt insists that the reason for this action was that if he could have certain property released from the effect of the writ of sequestration, he could sell the same at a very advantageous figure and would be in funds, and that Schmeidler agreed that he could have same released. Schmeidler testifies that Proffatt desired to arrange for the securing to the Second National Bank of the sums above mentioned, and to Thompson Hanstein of the value of the stock, which had become worthless.
It is unnecessary to determine whether this was the consideration for the agreement and the assignment of the mortgage thereafter made. The fact that the party pledgor actually executed and delivered the assignment of mortgage, so far as affecting the transaction is concerned, prevents him from setting up the lack of consideration. Perkins v. TrinityRealty Co., 69 N.J. Eq. 723; affirmed by a per curiam opinion,71 N.J. Eq. 304; Krouse v. Palmer, 89 N.J. Eq. 220.
The court of errors and appeals has stated the law to be:
"A valid mortgage may be given, and the debt need not have been one due from the mortgagor. One owning property, either personal or real, may pledge it for the payment of a debt of another person. There need not be proven, and there need not exist, any consideration between the mortgagor *Page 506 
and the mortgagee. The consideration need not move to the mortgagor, and the debt to secure which the mortgage is given may be the debt of another. Perkins v. Trinity Realty Co., 69 N.J. Eq. 725,726; affirmed, 71 N.J. Eq. 304; Krouse v. Palmer,89 N.J. Eq. 220." Federal Beneficial Association v. Eastern LandCo., 96 N.J. Eq. 628 (at p. 630).
After the interview above referred to, the Proffatts and Schmeidler went into the office of Thompson Hanstein (it adjoining that of Schmeidler's) and there met Mr. Hanstein, of the firm. After some discussion of the subject, and after obtaining from the bank the figures above indicated, the following papers were prepared and executed:
a. Assignment by Mrs. Proffatt to Proffatt of her one-half interest in said mortgage.
b. Assignment by Proffatt of said mortgage to Schmeidler.
c. Agreement between Proffatt and Schmeidler, as follows:
"This agreement made this 9th day of April, 1925, between George P. Proffatt, party of the first part, and Isidor Schmeidler, party of the second part, for and in consideration of the sum of one dollar each to the other in hand paid, the receipt whereof is hereby acknowledged,
Witnesseth, that whereas the said party of the first part has assigned unto the party of the second part that certain mortgage made by Bruno Garr and Rosa, his wife, and Robert Heilig to George P. Proffatt and Katherine B. Proffatt, dated September 14th, 1923, and recorded September 17th, 1923, in book 274 of mortgages, page 297, to secure the sum of $50,000, covering premises in the southerly line of Atlantic avenue distant 90.47 feet east from the east line of New York avenue, being 18.7 feet on Atlantic avenue and 150 feet in depth, regular, for the purpose of securing unto the Second National Bank of Atlantic City, New Jersey, the payment of the sum of $23,200, together with interest on $8,600 from April 1st, 1924, to date of payment, and also the sum of $2,000 to Joseph Thompson and Walter Hanstein, trading as Thompson Hanstein;
It is understood and agreed that the said party of the first part does hereby authorize the said party of the second part to sell or dispose of said mortgage at such time as shall appear to be to the party of the second part advisable for the purpose of making the payments aforesaid, and to that end the said party of the second part is hereby authorized to do any and all things necessary for the carrying out of the purposes of this agreement and the rendering over to the party of the first part of any surplus remaining after the sale of said mortgage and the pavment of the debts aforesaid. *Page 507 
And the said party of the second part does hereby agree with the party of the first part that he will fully and completely carry out the terms of this agreement and will hold said mortgage for the securing of the debts above set forth and will, at the time that seems most advisable to him, sell said mortgage and pay the debts aforesaid, and will pay over to the party of the first part the surplus remaining after said sale.
In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.
 Signed, sealed and delivered: GEORGE P. PROFFATT [SEAL] in the presence of: ISIDOR SCHMEIDLER [SEAL]
GLADYS M. BARBOUR.
State of New Jersey, County of Atlantic, ss.
Be is remembered that on this ninth day of April, A.D. 1925, before me a notary public of New Jersey, personally appeared George P. Proffatt, who I am satisfied is the person mentioned in and who executed the within agreement, and I having first made known to him the contents thereof, he acknowledged that he signed, sealed and delivered the same as his voluntary act and deed. All of which is hereby certified.
 GLADYS M. BARBOUR, Notary Public of New Jersey.
My commission expires January 26th, 1930."
d. Agreement between Proffatt and Schmeidler that Proffatt should receive such dividends as should be paid to the Second National Bank by the receiver of the insolvent corporation.
Later, the Second National Bank assigned its claim against said insolvent corporation, and Schmeidler mailed to Proffatt a check for the amount received by him therefor, which check was destroyed by Proffatt.
On December 4th, 1925, Judge Thompson wrote to the Central Corporation, then owner of the mortgaged premises, the following letter: *Page 508 
 "THOMPSON HANSTEIN Counsellors at Law Law Building Atlantic City, N.J.
December 4th, 1925. Central Corporation, Harry Cassman, Pres. Law Building, Atlantic City, N.J.
Dear Sir:
The Central Corporation is the owner of a piece of property on the south side of Atlantic avenue, 90.47 feet east of the east line of New York avenue, being 18.17 feet on Atlantic avenue and 150 feet in depth. The property is subject to a first mortgage of $50,000 made originally to George P. Proffatt and Catherine B. Proffatt, and Catherine B. Proffatt assigned her interest in said mortgage to George P. Proffatt, and George P. Proffatt, under date of April 3d 1925, assigned the mortgage to Isidor Schmeidler. This was for the purpose of securing through this assignment the Second National Bank of Atlantic City in the sum of $23,200 and Thompson Hanstein in the sum of $2,000.
This letter is written for the purpose of giving notice to the Central Corporation that the Second National Bank and Thompson 
Hanstein have the interest as above stated in said mortgage.
Respectfully yours,
THOMPSON HANSTEIN, T:H By Joseph Thompson."
On December 17th, 1925, the mortgaged premises were conveyed to the complainant.
On March 18th, 1926, the treasurer of the Bankers Trust Company wrote a letter to Cassman Gottlieb, representing the Central Corporation, as follows:
 "BANKERS TRUST COMPANY, Atlantic City, N.J.
March 18, 1926.
Messrs. Cassman Gottlieb, Real Estate Law Bldg., Atlantic City, N.J.
Gentlemen:
We are informed that you represent the owners of land and premises known as 1428 Atlantic avenue, against which we hold mortgage $50,000 Robert Heilig and Bruno Garr et ux., dated September 14th, 1923, payable at any time within ten years from the date thereof, assigned to us by George P. Proffatt et ux. *Page 509 
We are enclosing bill for six months' interest to March 14th, 1926, and would appreciate if you would place same in the hands of the present owners.
 Very truly yours, E. FORREST CRAMER, Treasurer."
Schmeidler had collected no interest, and sometime in March, 1926, caused to be prepared a notice, as follows:
 "To GEORGE P. PROFFATT:
Take notice that pursuant to that certain agreement between yourself and me bearing date April 8th, 1925, you authorize me to sell or dispose of that certain mortgage therein referred to, covering premises in the southerly line of Atlantic avenue, distant 90.47 feet east from the easterly line of New York avenue, and being 18.7 feet on Atlantic avenue by 150 feet in depth, at such time as shall appear to me to be advisable.
Take further notice that I deem the fifth day of April, 1926, at the hour of ten o'clock A.M., an advisable time at which to sell said mortgage, and I will at that time and at the banking house of The Second National Bank of Atlantic City, New Jersey, offer said mortgage at public sale to the highest bidder therefor for cash.
ISIDOR SCHMEIDLER."
On March 30th, notice of such proposed sale was posted in five places in Atlantic City, and on the following day a notice was mailed addressed to Mr. Proffatt at 324 North Rhode Island avenue. Mr. Bishop, of Thompson Hanstein's office, inquired of Mr. Bourgeois, of Bourgeois Coulomb, for the address of Mr. Proffatt, and was advised that although Mr. Bourgeois did not know Proffatt's address, he thought he was somewhere in the south and would shortly return. Bourgeois later notified Messrs. Thompson Hanstein that he was not authorized to accept service of such notice.
Proffatt never lived at the address to which either notice was sent and did not receive the same, and was actually without the city of Atlantic City and did not return until about April 23d, when he and his wife returned from Florida, having had no knowledge of the sale or of said notices until after that time.
There can be no question but that Schmeidler had had information that Proffatt's address was on Caspian avenue, *Page 510 
having written to him both before and after the sale to an address on Caspian avenue.
It is a well settled rule of the common law that the pledgee, upon default, may sell at public auction the chattel pledged, without judicial process and decree of foreclosure upon giving the debtor reasonable notice to redeem. Jones Pledg. Coll.Secur. § 603. Parties may, however, by contract, make it the duty of the pledgee to sell the property within a specified time.Ibid. 606. The notice of his intention to sell and of the time and place of sale is always necessary for the making of a binding sale of the property pledged, unless by agreement of the parties such notice has been expressly or impliedly waived.
Again, if the debt secured is not one which becomes due at a fixed time, there may be no default upon the occurrence of which a sale of the pledge can be made until the pledgee makes demand of payment or gives notice of the occurrence of the event which constitutes a default; or it may be that the event upon which a default occurs is one peculiarly within the knowledge of the pledgee; or it may be that such event is one which it is his option to declare. In such cases, of course, there is no default until the pledgee makes demand of payment, or gives notice of the default.
In the case sub judice, it was agreed that the said party of the first part, the pledgor, "does hereby authorize the said party of the second part, the pledgee, to sell or dispose of said mortgage at such time as shall appear to be to the party of the second part (pledgee) advisable for the purpose of making the payments aforesaid (amount due the creditors named), and to that end, the said party of the second part is hereby authorized to do any and all things necessary for the carrying out of the purposes of this agreement and the rendering over to the party of the first part of any surplus remaining after the sale of said mortgage and the payment of the debts aforesaid. And the said party of the second part (pledgee) does hereby agree with the party of the first part that he will fully and completely carry out the terms of this agreement and will hold said mortgage for the securing *Page 511 
of the debts above set forth, and will, at the time that seems most advisable to him, sell said mortgage and pay the debts aforesaid, and will pay over to the party of the first part the surplus remaining after said sale."
It has been held that in cases where the debt secured is not payable at a fixed time, a demand of payment, or that the pledge securing the debt be redeemed, should be made before the creditor can properly dispose of the pledged property, and that if the debtor be absent or cannot be found, judicial proceedings should be had to bar his right of redemption. Ibid. 608, and citingGarlick v. James, 12 Johns. (N.Y.) 146. Also, that where the provision is that the pledgee may sell in case the securities depreciate in their market value, the pledgor is entitled to notice to redeem. A sale without notice in such case will not pass the pledgor's right of redemption. As regards notice of sale, there is no distinction between the pledge for a debt due presently and one for a debt due upon time. Personal notice to the pledgor to redeem and of the intended sale must be given, as well as in the one case as in the other, in order to authorize a sale by the act of the party. The right of redemption incident to every pledge would be valueless, if the creditor could in the absence of any agreement dispensing with notice of sale, sell the property pledged without demand of payment and without notice of the time and place of sale. Ibid. 610.
There was no notice given by the pledgee to the pledgor, although an attempt was made to do so. A letter mailed to the pledgor was not mailed to his last known address, nor to any other address of his. Mr. Schmeidler testifies that although he inquired of Mr. Proffatt's son, a man of about twenty-eight years, where he could find his father, he did not tell him, the son, of the intended sale.
The notice of the sale provided for the sale at the banking house of the Second National Bank of Atlantic City, and is in the following words:
 "NOTICE OF SALE
Take notice that on Monday, the 5th day of April, 1926, at ten A.M., at the banking house of The Second National Bank of Atlantic *Page 512 
City, New Jersey, situate on the northeast corner of Atlantic and New York avenues, Atlantic City, New Jersey, I will offer at public sale to the highest bidder therefor, in cash, that certain mortgage made by Bruno Garr and Rosa, his wife, and Robert Heilig to George P. Proffatt and Katherine B. Proffatt, dated September 14th, 1923, recorded on September 17th, 1923, in the clerk's office of Atlantic county, at Mays Landing, New Jersey, in book 274 of mortgages, page 297, covering premises in the south line of Atlantic avenue, distant 90.47 feet east from the east line of New York avenue, being 18.7 feet on Atlantic avenue by 150 feet in depth, which said mortgage is to secure the sum of $50,000, and undivided one-half interest on which said mortgage has been assigned by the said Katherine B. Proffatt to George P. Proffatt, and the entire said mortgage has been assigned by the said George P. Proffatt to me.
Said sale will be made to the highest bidder therefor in cash, and the assignment will be delivered at that time.
The privilege of rejecting any and all bids is reserved.
ISIDOR SCHMEIDLER."
At the sale, the cashier of the Second National Bank and Mr. Hanstein were present, and the mortgage was sold to the Second National Bank for the sum of $26,246.34, the amount due the bank — $24,246.34, and the amount due Thompson Hanstein — $2,000.Jones Pledg. Coll. Secur. (2d ed.) 684.
A pledgee who purchases the pledge at a public sale is not chargeable with a conversion of it. Such a sale is ineffectual to change the title to the property which remains vested in the pledgor as it was before the sale; but that is the only result.Bryan v. Baldwin, 7 Lans. (N.Y.) 174; affirmed, 52 N.Y. 232; Canfield v. Minneapolis Agricultural and Mechanical Asso.,14 Fed. Rep. 801; Minneapolis Asso. v. Canfield, 121 U.S. 295;7 Sup. Ct. Rep. 887, modifying decree; Leighton v. Burkham,7 Ohio C.C. 487; Glidden v. Mechanics' National Bank, 53 Ohio St. 588,600; 42 N.E. Rep. 995.
The sale is not void but voidable at the election of the defendant. The debtor is at liberty to ratify the sale, and should he do so, it would be valid for all purposes. The ratification would make it lawful and relieve it from any imputation of being tortious as to the debtor. The pledgee's title to the property would thereby become perfect, and the debtor would be entitled to credit upon his debt for the *Page 513 
net proceeds of the sale. But if the debtor does not do this, but elects to treat the purchase by the pledgee as illegal, the sale thereupon is void, and the parties are remitted to their rights as they existed before any sale was made or attempted. The debtor is liable upon his debt, and the creditor still holds the property in pledge. Per Mr. Justice Grover in Bryan v.Baldwin, 52 N.Y. 232; affirming, 7 Lans. 174.
The reasons for this rule against purchase by the pledgee are clearly stated by Mr. Justice Williams, delivering the opinion of the supreme court of Ohio, in a recent case. "The rule results from the nature of the contract between the parties. Under a contract of pledge, the right of the pledgee to retain possession of the property continues until the debt or engagement for the security of which it was pledged has been discharged by payment or performance, or a tender, and demand for its return; and his obligation is to keep the article pledged, with due care, and restore it to the pledgor upon the performance of his agreement. On the other hand, in the absence of any stipulation to the contrary, it is the duty of the debtor to seek the creditor at the proper place and pay the debt, or tender its payment, before he is entitled to receive back the pledge. These obligations of the parties are reciprocal, and neither can require performance by the other without himself being able and ready to perform on his part; so that the possession of the pledgee being lawful as long as he retains the actual control and custody of the pledge, with the ability to perform his obligation by restoring it, he is not in default, until a demand, accompanied by a tender of the debt, is made. If he then refuse or fail to restore the pledge, he may be charged with its value. The action for its recovery, though treated as one for conversion, is in reality founded on the breach of the contract, and, hence, the creditor is entitled to recoup his debt. Until the breach occurs, no right of action accrues in favor of the pledgor; suffering the debt to run unsatisfied after maturity does not destroy the pledgee's lien, or the pledgor's right to redeem." Glidden v. Mechanics'National Bank, 53 Ohio *Page 514 
St. 588, 600; 42 N.E. Rep. 995; citing Whelan's Exr. v.Kinsley's Exr., 26 Ohio St. 131; Jones Pledg. ¶¶ 543, 566,571.
Although the bill of interpleader was filed to ascertain to whom the interest falling due upon the assigned mortgage should be paid, the determination of that question, of course, involves the ownership of the mortgage.
I am convinced that the sale of the mortgage to the Second National Bank must be set aside upon the payment to it of the sum of $23,200, with interest on $6,000 from April 1st, 1924, and on the balance from April 5th, 1926, to date of payment, and to Thompson Hanstein of the sum of $2,000, and of any expenses which the said bank has been obliged to incur.
Should solicitors be unable to agree upon the amount due the Second National Bank, I will either hear testimony or refer the matter for an accounting. *Page 515