JOHN MICKLES and Another, Appellants, *v.* ATLANTIC BROKERAGE COMPANY, INC., Respondent.

Fourth Department, May 7, 1924.

Principal and agent — action to recover for breach of implied warranty of authority by defendant to act as agent — evidence shows that defendant did not have authority to make particular contract of sale which was repudiated by its principal and that plaintiffs were not aware of limitation on authority — defendant is liable.

The defendant is liable on the theory of breach of an implied warranty of authority to act as agent in making a contract for the sale of grapes to the plaintiffs, which contract was repudiated by the seller, since it appears that defendant after showing the plaintiffs a telegram authorizing it to sell the grapes on certain conditions and receiving from the plaintiffs a counter proposition which it agreed to telegraph to the seller, actually telegraphed the seller terms different from those proposed by the plaintiffs, which terms were accepted by the seller and then the defendant entered into the contract in question with the plaintiffs, which contained the terms agreed on between the plaintiffs and the defendant, without notifying the plaintiffs that it had not telegraphed the seller the terms agreed upon, and the plaintiffs were never informed that the telegram sent by the defendant to the seller was different from the agreement which was subsequently repudiated by the seller.

DAVIS, J., dissents.

APPEAL by the plaintiffs, John Mickles and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 10th day of May, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 12th day of June, 1923, denying the plaintiffs' motion for a new trial made upon the minutes.

*Castle & Fitch* [*J. Sawyer Fitch* of counsel], for the appellants.

*Isaac Adler,* for the respondent.

HUBBS, P. J.:

The plaintiffs are copartners engaged in the wholesale and retail grocery business. The defendant is a corporation acting as a fruit broker. This action is to recover the damages suffered by the plaintiffs because of the defendant's breach of an implied warranty.

Plaintiffs allege that the defendant, acting through Richard Schuetze, its general manager, represented to them that it had authority to sell two cars of California grapes; that the plaintiffs purchased the grapes, relying upon the defendant's authority to sell them upon the terms stated; that the defendant did not have such authority, and that the defendant's principal refused to ship the grapes upon the order, thereby damaging the plaintiffs. The plaintiffs invoke the principle of law which gives one a right of action against an agent who assumes to make a contract on behalf of his principal, which he in fact is not authorized to make. The basis of such action is a breach of an implied warranty of authority. (*Baltzen* v. *Nicolay*, 53 N. Y. 467; *Simmons* v. *More*, 100 id. 140.)

To the general rule giving such right of action there is an exception, to the effect that an agent cannot be held liable if he fully discloses to the person with whom he is dealing the limitations upon his authority, and discloses all the facts and circumstances with reference to the authority under which he assumes to act. (*White* v. *Madison*, 26 N. Y. 117; *Taylor* v. *Nostrand*, 134 id. 108.) The respondent relies upon such exception, and contends that the plaintiffs were put in possession of all the facts in relation to its authority. That is the question to be determined here.

On September 8, 1922, Robert Romer & Co., at San Francisco, Cal., sent the following telegram to the defendant: " Atlantic Brok. Co., Granite Building, Rochester. Confirm sale of five cars muscats fifty dollars September shipment and three cars zinfandels at ninety if you want them also September shipment subject to conditions within our control zinfandel rollers sold at hundred today terms two hundred per car with order balance bank guarantee payment of sight draft twenty-four hours before car rolls this confirmation effective if deposit money available to us by Monday these absolutely regular terms on juice grapes by all large shippers to buyers regardless of their financial standing."

The defendant received the telegram on Saturday, September 9, 1922, and Schuetze went to the plaintiffs' place of business and showed it to the plaintiff Mickles, and stated to him in substance that it would be a dangerous proposition to send $200 in cash on each car, without a contract, and that he had known of instances where people had paid deposits on grapes and had

never received the grapes or the money back which had been paid. He then said: " We wire him that we pay him the money in a certified check and that he can dispose of this money in San Francisco the minute he delivers the documents to a bank."

The plaintiffs contracted to take two cars of grapes upon the terms stated by the defendant's manager, who said: " All right, Mr. Mickles, I will wire to San Francisco to Romer exactly as we have talked, and then we will wait until we get an answer on this telegram."

It is apparent that this arrangement was unauthorized by the telegram from Romer & Co., which required $200 to be paid on each car with the order, the money to be available to the vendor, Romer & Co., by Monday. The day of the conversation was Saturday, September ninth. On that date the. defendant sent a night letter to Romer & Co., as follows: " Robert Romer & Company, 350 Clay St., San Francisco, Calif. Accept one car muscats fifty three cars zinfandels ninety shipment surely during September mailed certified check eight hundred dollars Italian American Bank San Francisco. Guarantee payment sight draft written fully. Competition American growers selling sight draft through Buffalo distribution point if you cannot make similar conditions cant increase business. Make additional offers. Atlantic Brokerage Co. Inc."

Two of the cars were for another customer. The telegram was not an acceptance of the offer made by Romer & Co. Neither was it the counter offer authorized by the plaintiffs. Their agreement was to pay $400 by certified check to be delivered to the vendor, Romer & Co. when Romer & Co. delivered to the bank the documents.

The telegram sent by the defendant to Romer & Co. on September ninth stated that the defendant had mailed a certified check, but no check had been mailed. After Romer & Co. received the telegram, and on Monday, September eleventh, they wired defendant confirming the sale, thereby waiving the condition in their original offer that the money must be available to them on Monday, September eleventh.

After receiving the telegram from Romer & Co., dated Monday, September eleventh, the defendant's manager executed and delivered a confirmation of the sale to plaintiffs. It contained the terms stated in the first talk, hereinbefore quoted, to the effect that the deposit check should be sent to a bank and not be delivered to Romer & Co. until the shipping documents were delivered to the bank. That contract was entirely different from the contract which Romer & Co. had authorized by its telegram of September

eleventh, in reply to the defendant's telegram of September ninth, for in that telegram the defendant stated that a certified check had been mailed, and there was nothing in the telegram which indicated that the check had conditions attached to its delivery.

On September ninth, the day the defendant telegraphed Romer & Co. that the certified check had been mailed, Mr. Schuetze wrote them a letter in which he stated that a certified check had been mailed to the bank, to be delivered when shipment was made. That was the first notice to Romer & Co. that the check had been sent to the bank on condition that it was not to be delivered until they made shipment of the grapes. As a matter of fact, the check was not mailed to the bank until September thirteenth.

Romer & Co., after receiving the defendant's letter imposing a condition upon the delivery of the check, refused to carry out the contract which the defendant had entered into with the plaintiffs. The defendant never informed the plaintiffs that the telegram sent to Romer & Co. on September ninth was different from the agreement which they had made. If Schuetze had telegraphed Romer & Co. on Saturday, September ninth, what he agreed with the plaintiffs that he would telegraph them, and if Romer & Co. had confirmed that by the telegram on September eleventh, it would have constituted authority for the defendant to execute the contract which it did execute, and the plaintiffs would have been in full possession of all the facts in relation to the defendant's authority. In fact, the defendant was without authority to make the contract which it did make with the plaintiffs, because the counter offer which it made to Romer & Co. contained the misstatement that a check had been mailed, and it did not disclose the fact that the check, when mailed to the bank, would not be immediately available to Romer & Co.

The evidence discloses that the defendant never informed the plaintiffs as to the terms of the telegram which it sent to Romer & Co. on September ninth. The plaintiffs never knew that the defendant had sent a telegram which differed from the agreement. The plaintiffs were not, therefore, informed of all the facts, and they did not have the same opportunity that the defendant had to judge whether the defendant acted within the scope of its authority. The plaintiffs knew of the limitations on the defendant's authority, expressed in the first telegram from Romer & Co., but the authority given in that telegram had been superseded by the new offer contained in defendant's telegram to Romer & Co. and their reply thereto on September eleventh. It was under the assumed authority growing out of those last two telegrams that the defendant undertook to act in making the contract of sale

to the plaintiffs. It assumed to have authority to make the contract according to its terms. It thereby warranted that it had such authority. The plaintiffs, not being in possession of the facts, were not in a position to judge for themselves. The defendant is liable for the damages caused the plaintiffs because of its breach of such implied warranty. The finding of the jury that the plaintiffs were in possession of all the facts constituting defendant's authority is entirely without evidence to sustain it.

The judgment should be reversed on the law and facts and a new trial granted, with costs to appellants to abide the event.

All concur, except Davis, J., who dissents and votes for affirmance.

Judgment and order reversed on the law and facts and new trial granted, with costs to appellants to abide event.