VICTORIA GOTTFREDSEN HALL, PLAINTIFF-RESPONDENT, v. HERMAN M. PAUSER, DEFENDANT, AND FIDELITY PETROLEUM CORPORATION, DEFENDANT-APPELLANT.

Submitted January 20, 1942—Decided February 21, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the plaintiff-respondent, *Edmund A. Hayes.*

For the defendant-appellant, *Lewis S. Jacobson.*

The opinion of the court was delivered by

CASE, J.   Appellant appeals from a judgment entered against it in the Middlesex Pleas following a trial before Judge Lyon sitting, by stipulation, without a jury.   The suit is to collect arrears in rent and grounds in a lease made by Herman M. Pauser as tenant and guaranteed, as to rental payments, by the Fidelity Petroleum Corporation.   The sole defense presented below and the only ground of appeal argued before us is that the instrument sued upon was executed by the Fidelity Petroleum Corporation as an accommodation endorser and that the execution was therefore *ultra* the powers of the corporation.

The uncontradicted proofs are to the effect that the appellant is engaged in the sale of fuel oil and of products having to do with the garaging and servicing of motor vehicles and was interested in obtaining an outlet for the use and sale of its goods in the location of plaintiff's property.   It caused its representatives to interview Pauser, and Pauser, in turn, negotiated with the plaintiff with the result that plaintiff, as landlord, and Pauser, as tenant, signed the lease, and appellant, without whose assumption of liability plaintiff refused to enter into the contract of lease, executed the undertaking to pay, on demand, without notice of default and without preliminary proceedings against the tenant, any rent or water charges in which the tenant might default.   By the terms of the lease the tenant was privileged to convert the premises into a "drive-in" gasoline station.   Appellant, by its contractors and under its own financing, to the extent of $1,600, assisted Pauser in the renovation of the building.   In return it had Pauser's agreement to sell its, and only its, products and to repay the debt in a manner not of importance here. Pauser did not make a success of the enterprise.   He defaulted

in his rental payments as well as in reducing his debt to the appellant: whereupon appellant arranged with him to surrender his stock, equipment and possession to a new tenant procured by appellant. The last mentioned development occurred about the month of March, 1940. Beginning April 1st, 1940, and until the time of the trial, September 29th, 1941, appellant paid the current rent. Also, after this action was started for the collection of arrears in rent to and including February, 1940, the appellant paid a substantial amount on those arrears.

There was adequate consideration for the undertaking. Consideration moved from the owner in that she would not otherwise have executed the lease; and to the appellant in the reasonable expectation that a tenant, committed to the sale of its products, would serve its interest. Appellant could not do business except by marketing its goods in one way or another.

The statutory provision contained in *R. S.* 14:3-4 (cited by appellant) that no corporation formed under the General Corporation Act shall carry on the business of an insurance or guaranty company is not pertinent. There is nothing in the evidence to suggest that the appellant carried on such a business. Indeed, it is debatable whether, in view of the broad powers given in the certificate of incorporation to engage in any business transaction collateral or of value to the chief corporate activities, and of the close integration between the sponsoring of retail sales outlets and the manufacture of and traffic in petroleum, its by-products and motor car accessories in general, the making of the guaranty was *ultra vires*. But whether so or not, the appellant, in inducing the respondent to effect a rental that she otherwise would not have made and to give extended credit in a venture upon which the appellant entered for its own profit and advantage, placed itself in such a position that it may not now be heard to say that it had not the power to do that which it did. There was nothing immoral or contrary to public policy in the transaction; only the interest of the stockholders were affected by the assumed obligation. Appellant continues to find such advantage in the lease as comes from having, in the occupying tenant, one

who sells its goods. Corporations, like individuals, in dealing with other parties, must live up to the rules of common honesty. The transaction sued upon is complete; the party seeking relief has done her part and cannot now, upon rescission, be restored to her former *status;* wherefore the appellant is precluded from interposing its own infirmity as a defense. *Camden and Atlantic Railroad Co.* v. *Mays Landing, &c., Railroad Co.,* 48 *N. J. L.* 530; *Hudson, &c., Loan Association, Inc.,* v. *Horowytz,* 116 *Id.* 605. Practices of petroleum producers, refiners and merchants in procuring and maintaining retail outlets in their highly competitive industry have, as is well known, included various business expediences by way of assisting a 'friendly but poorly financed service station operator to enter upon and to continue business.

The judgment below will be affirmed.