LLOYD E. FULLER, PLAINTIFF-RESPONDENT, v. MATTHEW F. MELKO, DEFENDANT-APPELLANT.

Argued October 30, 1950—Decided November 20, 1950.

Mr. *John T. Keefe* argued the cause for appellant (*Mr. Edmund A. Hayes*, attorney).

Mr. *Ernest Fasano* argued the cause for respondent (*Messrs. Quinn, Doremus, McCue & Russell*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is an appeal from a judgment of $5,212.67 plus interest for fees and expenses allegedly due to the plaintiff by reason of an investigation which he undertook at the behest of the defendant, the Middlesex County Prosecutor. The appeal was taken to the Superior Court, Appellate Division, and brought here on our own motion.

The plaintiff in 1947 was a licensed detective. On March 3rd of that year, the defendant, in his official capacity as county prosecutor, asked the plaintiff to undertake an undercover investigation of gambling activities in Middlesex County. There is a factual conflict as to what comprised the schedule of fees and expenses. The plaintiff contends he was to receive $25 per day for himself and $3 an hour when he worked less than a full day, $15 per day for each other investigator he employed on the job, ten cents a mile, hotel, meal and other expenses incidental to the investigation. The defendant asserts the mileage allowance was the only item specifically agreed upon and the remainder of the expenditures and services rendered were to be at a reasonable rate but in no event to exceed $3,500, the amount of the appropriation dedicated for this purpose.

On March 5th, two days after their first meeting, the parties met again, this time at the home of an assistant prose-

cutor. There the defendant and his assistant, within the presence of the plaintiff, discussed the budgetary limitations which would be encountered. The plaintiff in his bill of particulars admits he was told at this meeting that the appropriation would not cover the cost of the investigation but that "any amount in excess of the appropriation would be covered by certification of Justice Colie," then the presiding justice of the Supreme Court in the county. The defendant denies this, asserting the plaintiff was explicitly instructed that the cost would have to stay within the $3,500 appropriation and preferably not exceed $3,000. We give no consideration to this version because the jury decided otherwise.

Investigatory activities were immediately commenced after the meeting of March 5th and continued until April 20th, when the plaintiff was ordered to quit because a special attorney general had been appointed to take charge of all gambling investigations in the county. He thereafter completed his reports and submitted his bill in the amount of $5,212.67, the subject of this action.

The prosecutor forwarded the bill to Justice Colie, pursuant to *R. S.* 2:182–7, which provides that amounts expended by the prosecutor "shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the supreme court justice presiding in such county." The justice refused to approve the bill as he thought it exorbitant.

The plaintiff submitted his bill to the county, which denied payment, asserting the contract was void as to the county under *R. S.* 40:2–29(b), being in excess of the amount appropriated for the purpose of special investigations. It also lacked the approval of the justice as provided for in *R. S.* 2:182–7. This suit was thereupon initiated against the prosecutor individually, based on the theory that he became personally liable by reason of having exceeded his authority in making the contract.

The case was tried before a jury and a verdict in favor of the plaintiff was returned for the full amount plus interest.

One of the grounds, which we think is without merit, urged for reversal of the judgment below is that the plaintiff knew at the inception of the contract that the cost thereof would exceed the appropriation allowed the prosecutor and the contract was therefore legally a nullity and contrary to law and public policy.

■ We are not in accord with this suggestion. True, under *R. S.* 40:2–29 contracts and expenditures in excess of the appropriations provided are generally void as to the county, but *R. S.* 2:182–7 makes specific provision for the payment of amounts expended by a prosecutor in excess of his appropriation if they are authorized by the presiding Supreme Court justice.

The true test of the defendant's personal liability in the present case is whether or not the plaintiff, in making the contract with him, had full knowledge of the facts regarding his authority to bind the county for the expenses incurred.

It is not disputed that the prosecutor acted as the agent of the county in making the contract with the plaintiff and that it was for a public purpose in pursuance of the duties and obligations of his office.

■ One who assumes to act as agent for another impliedly warrants his authority to do so, but where he fully discloses the facts constituting his authority, he may not be held liable either on the contract or for breach of implied warranty. 1 *Williston on Contracts, Rev. Ed.* 1936, § 282:

"Fraud on the part of the agent is not essential to his liability, but if he fully discloses the facts on which his assumption of authority is based, or if the other party has actual or presumptive knowledge thereof, he will not be a warrantor."

■ In *Mott v. Kaldes,* 288 Pa. 264, 135 *A.* 764 (1927), the rule is stated in these words:

"Neither agent nor principal is bound by unauthorized exercise of agent's authority, where parties knew the facts but misconceived applicable law."

In *Mickles v. Atlantic Brokerage Co., Inc.,* 209 *App. Div.* 182, 204 *N. Y. S.* 571 (1924), the defendant, as agent, sold certain goods which its principal refused to deliver because the agent had exceeded its authority. In an action seeking to hold the agent personally liable, the court said:

"The plaintiffs invoke the principle of law which gives one a right of action against an agent who assumes to make a contract on behalf of his principal, which he in fact is not authorized to make. The basis of such action is a breach of an implied warranty of authority.

"To the general rule giving such right of action there is an exception, to the effect that an agent cannot be held liable if he fully discloses to the person with whom he is dealing the limitations upon his authority, and discloses all the facts and circumstances with reference to the authority under which he assumes to act."

Similar language was used in *Michael v. Jones,* 84 *Mo.* 578 (1884):

"Where all the facts are known to both parties, and the mistake is one of law as to the liability of the principal, the fact that the principal cannot be held is no ground for charging the agent with liability."

And in *Equitable Trust Co. v. Taylor,* 330 *Ill.* 42, 161 *N. E.* 62 (1928):

"Where the contract is made in good faith, and both parties are fully cognizant of the facts as to the agent's authority, the result is to exonerate the principal from liability because the agent had no lawful authority to make the contract, and the agent cannot be held liable either *ex contractu* or *ex delicto.*"

The facts as developed in the case *sub judice* definitely qualify it within the rule enunciated in the cited authorities. In his bill of particulars the plaintiff answered:

"Plaintiff was told that the appropriation would not cover the costs of the investigation but was advised by the defendant that any amount in excess of the appropriation would be covered by certification of Justice Colie.

"On March 5, 1947, defendant stated that the appropriation in his office would not cover the costs of the investigation but advised that any amount in excess would be covered by Justice Colie."

While being cross-examined during the trial, the plaintiff replied as follows, showing his complete knowledge of the

budgetary requirements and the legal procedure customarily followed when the budget was exceeded in order to qualify the county freeholders to make payment:

"Q. Now, you were aware that you were working under a budget? A. Yes, with qualifications.

"Q. Well, what are the qualifications? A. Because as I understand it, the one exception to the principle that a public official cannot exceed his budget is the prosecutor.

"Q. And what is the exception that you understand? A. As I understand it, if for any reason crime or whatever happens makes it necessary for a prosecutor to go beyond that, he can do it with the approval of the Supreme Court Justice of that district. That is my understanding.

"Q. I see; and how did you get any such information as that? A. I worked for fifteen years for a prosecutor, not as prosecutor, but as a lawyer. I have heard this thing discussed many times."

"Q. And what office were you connected with for about fifteen years? A. The office of Quinn, Parsons & Doremus and then Quinn & Doremus, and Mr. Quinn was prosecutor for five or six years at that time, at least five years of that time."

█ The plaintiff vigorously asserts that he did not know the unexpended amount of the appropriation available to the prosecutor for special investigations. He did know, however, according to his own bill of particulars, that the appropriation was insufficient to cover the cost of the investigation upon which he was about to embark. He also admittedly knew that the payment for services and expenses, insofar as they exceeded whatever unexpended appropriation remained, was contingent upon securing the authorization of the presiding Supreme Court justice. He had considerable experience in this field of endeavor, having worked for a prosecutor for fifteen years and, according to his own testimony, had heard this procedure "discussed many times." He must have been cognizant that the certification of the Supreme Court justice would be forthcoming only if the bill for services submitted was, in his opinion, reasonable and proper.

Apparently, if what both parties contemplated had transpired, the authorization of the Supreme Court justice would have been received and no controversy would have ensued.

The fact that the bill for services might be, as it was, determined by the justice to be exorbitant was not considered or anticipated. Certain it is that the defendant did not represent that the certification had been secured in advance or that it would be forthcoming regardless of the amount or the reasonableness of the bill submitted.

Under these circumstances can personal responsibility as enunciated in *Bay v. Cook,* 22 *N. J. L.* 343 (*Sup. Ct.* 1850), and *Timken v. Tallmadge,* 54 *N. J. L.* 117 (*Sup. Ct.* 1891), be sustained? We think not. In both these cases there was an assumed but nonexisting authority held out and impliedly represented by an agent who had no warrant or authorization to bind the governmental unit which was the recipient of the services rendered.

The *Cook case, supra,* determined that if an agent exceeds his authority in making a contract, he is personally liable for its performance, for the law will esteem him as acting in his individual capacity rather than suffer the contract to fail, but in the *Tallmadge case, supra,* it was emphasized that "in fact, the mayor was without the least semblance of power to act for any public body in the matter," and it commented that "a public agent, whenever the contract is within the limits of the officer's power and duty, is not personally bound unless a contrary intention is plainly indicated by the terms and circumstances of the transaction."

Here the facts and circumstances clearly indicated that neither party intended the prosecutor was to be personally liable. On the contrary, both contemplated and expected the services would be paid for by the county and each had full knowledge of the facts and of the statutory procedure which would have to be invoked to accomplish that end.

There was a full and complete disclosure of the facts regarding the defendant's authority, its limitation, the budgetary statutes and the procedure to be followed to secure payment for the services rendered. Under these circumstances there was no personal liability.

The judgment below is reversed without costs.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.