50 N.J. Super. 147 (1958)
141 A.2d 319
MANUEL ROSS AND ISRAEL ROSS, CO-PARTNERS, TRADING AS ROSS PLUMBING AND HEATING CO., PLAINTIFFS-APPELLANTS,
v.
REALTY ABSTRACT COMPANY, A CORPORATION, AND WILBUR A. BARRETT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1958.
Decided May 15, 1958.
*149 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Albert B. Melnik argued the cause for plaintiffs-appellants (Messrs. Hermann, Melnik and Lowengrub, attorneys).
Mr. Neil F. Deighan, Jr., argued the cause for defendant-respondent Realty Abstract Company (Messrs. Kisselman, Devine and Deighan, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The Camden County Court, sitting without a jury, found in favor of the defendants in an action wherein the corporate defendant was sought to be held on an agreement of guarantee, and the defendant Barrett, alternatively, for breach of implied warranty of authority to make the agreement on behalf of the corporation as its president and executive officer.
Plaintiffs are plumbing contractors. They had entered into contracts with M & J Home Company, builders, to *150 furnish plumbing installations in two groups of homes at Thompson Street, Camden, one being the 2900 block and the other the 2800 block. The contract for the 2900 block called for 19 installations at unit prices of $800 per house, payable in specified stages of the work at each house, full payment for each being due when plaintiffs had finished work thereon. By June 1954, plaintiffs were owed a net amount of about $1,500 for work on the 2900 block and consequently brought their work almost to a halt. There were then five houses to complete on that block. Very little work had been done by plaintiffs on the 2800 block.
Defendant Realty Abstract Company is a title company which had been engaged by the builder and the construction mortgagee to examine titles, arrange settlements on sales of the houses and disburse funds to contractors and materialmen after checking for and disposing of liens. Its compensation was in the form of title insurance premiums and title examination and settlement fees paid by purchasers of the completed homes. The defendant Barrett, its president, exercised general authority in these matters without consultation with other officers of the corporation or its board of directors. All of plaintiffs' receipts of payment on this work were disbursed to them by Barrett.
Plaintiff Manuel Ross testified that when he slowed down on the work in June 1954, Barrett phoned him and asked him to come in to discuss the matter. He did so and was asked why he was not finishing the job. He explained that he could not afford to put more capital into the job when he was not receiving current moneys due. Barrett then said that if he would finish the plumbing on both the 2800 and 2900 blocks, Realty Abstract would guarantee the payment of all moneys then due and to become due on the 2900 block. He agreed to do so. He testified that he would not have continued with the work on the 2900 block without the guarantee. A week later he signed an agreement in Barrett's office, pursuant to which he and other subcontractors agreed to subordinate any lien rights they might have or obtain in reference to work at the 2800 block to a construction *151 mortgage lien, provided that M & J Home Company would authorize Realty Abstract Company to withhold from it all moneys to be realized from settlements on sales of homes on the 2900 block and use such funds for the construction of the 2800 block houses.
On July 26, 1954, according to Ross, Barrett sent him a copy of the said agreement signed by the subcontractors, together with a transmittal letter on the letterhead of the corporate defendant and reading as follows:
 "July 26, 1954
 Ross Plumbing & Heating Co.
 1138 South Sixth Street
 Camden 2, N.J.
 Attention: Mr. Manuel Ross
Dear Mr. Ross:
We enclose herewith copy of the agreement executed by Wm. M. Young Co. and others pertaining to the completion of the construction of M & J Home Company at 28th and Thompson Streets, Camden.
We also guarantee the payment to you of any money due you for the completion of work in the 2900 block of Thompson Street.
We trust that you will find this satisfactory.
 Very truly yours,
 W.A. Barrett
 W.A. Barrett
 President"
Plaintiffs finished the stipulated work on all the houses. The present action is to recover on the guarantee expressed in this letter. The amount sought to be recovered, $4,181, is not disputed as being owing on the 2900 block project by M & J Home Company. Plaintiffs were paid by M & J for their work on the 2800 block after institution of suit therefor. They hold an unsatisfied judgment against M & J for the amount claimed in the present case.
Barrett's version of the conversation and understanding he had with Ross was that any funds accruing from settlements on the 2900 block should be used, in the first instance, for completion of the 2800 block, the subcontractors to subordinate their claims on that block to permit its financing *152 and completion. As to the letter of guarantee, it was understood that meant only that Barrett would see to it that any funds available from settlements or construction advances not needed for the completion of the 2800 block would be paid to plaintiffs. No moneys became available in that manner to pay the balance due the plaintiffs.
The trial court rendered oral conclusions embodying, in effect, the following conclusions and findings insofar as concerns the corporate defendant: (1) the defendant corporation had no "corporative power" to act as guarantor; (2) third persons are on notice as to the limitations of an agent's authority to act for a corporation; (3) Barrett was never authorized by the corporation to make the guarantee; (4) in signing the subordination agreement plaintiffs relied upon advice of their attorneys, not on Barrett; (5) there was no consideration to support the corporate defendant's undertaking, if it was a guarantee, because it received no benefit; in fact the true arrangement was as testified to by Barrett, not an unconditional guarantee of payment. The court found no cause of action and entered judgment for both defendants.
On this appeal the defendant supports the judgment on each finding thus made in its favor.
We think the construction of the letter of guarantee was incorrect. Accepting the subordination agreement and Barrett's testimony as to his oral discussions with Manuel Ross as technically before the court as a matter of evidence because not objected to at the trial, they do not substantively affect the undertaking of guarantee expressed on the face of the writing. They do not illuminate any ambiguity in the writing. While in a proper case even unambiguous words may be given special meaning by surrounding circumstances, here the specific meaning defendants impute to the words of guarantee on the basis of extrinsic matters is totally inconsistent with any fair signification of the language. The proofs as to contemporaneous oral understandings simply attempt to negate a written guarantee which is unconditional. This is a violation of the parol evidence rule, not *153 a permitted illumination of the meaning of a written agreement by evidence of surrounding circumstances. See Casriel v. King, 2 N.J. 45 (1949); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293 (1953); Winoka Village v. Tate, 16 N.J. Super. 330 (App. Div. 1951); Crewe Corporation v. Feiler, 49 N.J. Super. 532 (App. Div. 1958).
While the letter might have been argued to be ambiguous as to whether future as well as past obligations were to be covered by the guarantee, the oral testimony by Barrett was not pertinent to that subject. Defendants contend the guarantee was ambiguous in other respects. But no such ambiguity is resolved by the circumstances they rely on. On the basis of Barrett's testimony the letter was not a guarantee in any proper sense but only an undertaking by defendant to do what it would be expected to do as a matter of course, i.e., turn over to plaintiffs on their claim any moneys which happened to become available for the purpose.
In view of all of the relevant proofs, the written agreement must be held as a matter of law to constitute an absolute undertaking by defendant to see to plaintiffs' payment of any moneys due them for the plumbing work on the 2900 block.
Defendant argues that if the letter is construable as a guarantee, it is ineffective because without consideration running to it. We think there was consideration here both in the sense of a benefit to the guarantor and a detriment to the plaintiff, see S. Kosson & Sons v. Harris, 108 N.J.L. 162 (E. & A. 1931), and either is sufficient (ibid., at p. 166). Either a slight benefit to the promisor or a trifling inconvenience to the promisee is good consideration when bargained for. Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., 131 N.J.L. 191, 198 (E. & A. 1943); cf. American Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12, 18 (1954). In the instant case the benefit to the corporate defendant in getting the 2900 block completed was a speeding of the day of final settlements and its consequent coming into the compensation for its work. There may also have been its desire as a matter of business good will with the *154 builder and mortgagee to show its capacity to expedite a responsibility which had been delegated to it to assist in getting such subcontractors as plaintiffs back on the job.
There was a detriment, moreover, to the plaintiffs in going back to finish a multiple job which they at least arguably could have rightly regarded as severable and refrained from completing until paid for the units already completed and required to be paid for when finished, under the contract terms. See Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., supra (131 N.J.L., at pages 196, 197); cf. Magliaro v. Modern Homes, Inc., 115 N.J.L. 151 (E. & A. 1935). In any case, even if plaintiffs were regarded as under an enforceable obligation to M & J Homes Company to complete all the work regardless of payment, their promise to a third person to do so was sufficient to support a reciprocal undertaking by the third party. Joseph Lande & Son, Inc., supra.
For any of the reasons mentioned there was consideration for defendant's guarantee.
Defendant urges that Barrett was without authority to enter into the guarantee and that the action of the corporation was ultra vires. The latter point may be disposed of briefly. We need not decide the question of corporate power as it is settled that the receipt of benefits by a corporation from an ultra vires act estops it from pleading the defense after the other contracting party has completed his performance in reliance upon the agreement. Park & Tilford v. Vaux Hall Liquors, 132 N.J.L. 178 (E. & A. 1944); Hall v. Pauser, 128 N.J.L. 211 (Sup. Ct. 1942). That was certainly the case here.
The corporate officers of defendant testified that Barrett had no authority to make a guarantee of payment to a subcontractor. It is undenied that he had no express authority to do so. Plaintiffs rely, however, on the doctrine of agency by apparent authority. A principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out as possessing. Erie R.R. Co. v. S.J. Groves *155 & Sons Co., 114 N.J.L. 216, 219 (E. & A. 1935). The precise question is whether the principal has placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question. Ibid.; Price v. Old Label Liquor Co., 23 N.J. Super. 165 (App. Div. 1952); Gabriel v. Auf Der Heide-Aragona, 14 N.J. Super. 558 (App. Div. 1951). Distinguish the situation of actual authority implied from the circumstances, Carlson v. Hannah, 6 N.J. 202, 212 (1951), which is not argued by plaintiffs to be applicable here.
We think the evidence here adduced was sufficient to create a fact issue as to the existence of the requisite apparent agency. Barrett was given broad discretion in the execution of the details of his work. He had more than six conferences with Manuel Ross in connection with the 2900 block construction. He testified that he regarded himself as possessed of authority to issue the letter to Ross and had written "other letters of that kind and character" with relation to other projects. As to the effect of such testimony by an agent, see Wilson v. Savino, 10 N.J. 11, 17 (1952). A jury could have found from the evidence that Barrett was allowed and expected to be an expediter in cases of such an impasse as was presented by plaintiffs' refusal to go on with the work.
Whether plaintiffs were reasonably justified as a matter of ordinary business prudence in believing Barrett's authority to extend to the making of such a guarantee as that signed by him on the corporate defendant's behalf is a fairly debatable question of factual inference, open to determination either way. We think it not extreme to venture that plaintiffs may have reasonably assumed that the corporate defendant was authorized by the lender and the owner to go that far if necessary to get plaintiffs to proceed with the work, aside from the question whether they could assume Barrett was authorized to do so on its own account to obtain the benefits alluded to above. We cannot, however, discern *156 from the trial court's oral conclusions any specific determination of the question of fact as to Barrett's agency by apparent authority. There was only a finding that there was no actual authority. We would be unwarranted in inferring an implied finding by the court of lack of agency by apparent authority from the general finding in favor of defendant, in view of the other legal and factual conclusions by the trial court with which we have expressed differences above.
The trial court held that Barrett was not liable individually, because he received no benefit. This misconceives the nature of an action for breach of an implied warranty of authority. One who assumes to act as agent for another impliedly warrants his authority to do so unless he fully discloses all the facts relating to his authority. Fuller v. Melko, 5 N.J. 554 (1950). The question as to any breach of implied warranty of agency by the defendant Barrett will have to be determined at the new trial, being at least partly dependent upon resolution of the factual question as to the existence of authority, actual or apparent.
Reversed and remanded for a new trial.