GEORGE N. BLISS and EDWARD H. GIBSON, partners, as George N. Bliss & Company,

*v.*

AMELIA C. CRONK, individually and as executrix of her husband, William H. Cronk.

[Submitted June 12, 1901. Decided November 16th, 1901.
Filed December 21st, 1901.]

1. A mortgage of the separate property of a wife to a partnership consisting of her husband and another, reciting that it is to secure her debt to the firm, when she owes them nothing, but for which her husband is given credit on the firm books, cannot be enforced, to collect his indebtedness to the firm.

Bliss v. Cronk.

2. Where it is claimed that a mortgage on a wife's separate property, which recites that it is to secure her debt to the firm in which her husband is partner, is to secure his debt to the firm, she may show the agreement between her and her husband that it should not be so used.

On final hearing on bill, answer and proofs.

The object of the bill is to enforce, by foreclosure, a mortgage covering the lands of the defendant, Amelia C. Cronk, executed by her and her late husband, William H. Cronk, to the firm of George N. Bliss & Company, of the city of New York, dated December 31st, 1896, to secure the sum of $1,500. The mortgage recites that the

"said Amelia Cronk is justly indebted to the said party of the second part [the complainants] in the sum of $1,500, secured to be paid by her certain obligation bearing even date with these presents in the sum of $1,500, conditioned for the payment of the said first-mentioned sum of $1,500 on the 31st of December, 1899,"

with interest, payable semi-annually; and after conveying the premises in the usual form, it contains a covenant by Amelia C. Cronk to pay to the party of the second part the said sum of money, with interest. No separate obligation was given.

The mortgage was not recorded until January 12th, 1899.

The circumstances attending its execution, as developed by the evidence, are as follows:

The firm of George N. Bliss & Company, at that time, consisted of George N. Bliss, one of the complainants herein, and William H. Cronk, the husband of the defendant. They were engaged in the business of manufacturing ladies' coats and cloaks, in the city of New York, and the interest of Mr. Bliss in the concern was three-quarters and that of Mr. Cronk one-quarter. The business had been running for two years, and had been unsuccessful. The firm started with little or no capital, and after counting the amount withdrawn by each partner for living expenses, which left each considerably indebted to the firm, it was substantially insolvent at the end of the year 1896. It was then agreed between the partners that some contribution should be made by

32

each to the common fund, in order to prevent their being pronounced insolvent by the mercantile agencies. Mr. Bliss borrowed from his wife $4,000 in cash, and put it to his credit on the books. Mr. Cronk procured his wife to execute the mortgage in question, and it was credited to him on the books at its face value. At the time of crediting it his account was overdrawn $4,175, and it still remained overdrawn $2,675. The understanding between the partners at the time, as testified to by Mr. Bliss, was that thereafter they were to be more economical in drawing money for their personal expenses, and that out of the profits which they hoped to make, when sufficient for that purpose, the mortgage given by Mrs. Cronk was to be treated as paid and surrendered before the $4,000 was repaid to Mrs. Bliss, but that was also to be repaid. The understanding was that, after the date of these contributions, Mr. Cronk should draw but $100 a month for living expenses and Mr. Bliss $200 a month, and no more.

No direct communication was had between Mrs. Cronk and Mr. Bliss with regard to the giving of the mortgage. Mrs. Cronk was induced to give the mortgage upon the representation, by her husband, that the firm wished to use it for the purpose of making a show of assets for the mercantile agencies, and an express verbal statement by him to her that Mr. Bliss had told him that it would never be a lien against the property, and Cronk drew, signed and handed to her a statement in these words:

"127 Pennington Ave.
"Passaic, N. J.

"N. Y., Dec. 31, 1896.

"This is to certify that the mortgage given to us by Mrs. Amelia C. Cronk for $1,500, on the property situated on Pennington Ave., Passaic, N. J., was given without any consideration whatever, and is not taken as a lien on the property aforesaid. We being financially embarrassed and wishing to make a statement to the Commercial Agencies, so that our credit would not be impaired, asked Mrs. Cronk to make the mortgage aforesaid, so that we could use the same as an *asset* in making out our report. Fifteen hundred dollars being the amount of *shrinkage* to our capital for the last six months of the year, that with previous losses had made the credit of the firm doubtful with some houses.

"GEO. N. BLISS & CO."

No authority was given by Mr. Bliss to Mr. Cronk to make such representation to Mrs. Cronk, and he did not know that any such representation was made, except so far as it may be inferred from his own statement of the arrangement above stated.

The business was continued for two years, with the result that, without charging against the business as expenses the amount drawn by the two partners, the share of the profits to be credited to Mr. Cronk for the year 1897 was $630.06, and for the year 1898, $511.04, or $1,141.10 in all; but during that time Cronk drew over two thousand dollars for his living expenses, which increased the balance against him at the end of the year 1898 to over five thousand four hundred dollars. He retired from the firm in January, 1899, and was succeeded by Mr. Gibson, one of the complainants, who had all the time been an employe of the firm and familiar with the facts hereinbefore stated. Shortly afterwards the mortgage was put on record, and after Cronk's decease this bill was filed.

*Mr. Vivian M. Lewis,* for the complainants.

*Mr. William W. Watson,* for the defendant.

PITNEY, V. C.

The deed has a dual character—*first,* it contains a covenant by Mrs. Cronk to pay a sum of money to the complainants, stated to be a pre-existing debt due from her to them; *second,* a conveyance of land to secure that debt.

The first is an executory contract by a married woman, and the second an executed conveyance whose validity and liability to be enforced depends upon the enforceability of the executory contract.

There was, in fact, no debt due and owing by Mrs. Cronk to the complainants, and this was well known by them when the mortgage was delivered to them and credited to Mr. Cronk on their books; hence, the complainants are not entitled to relief in that aspect of the case.

The true aspect of the case, from complainants' standpoint,

is that the wife became the surety of the husband for the amount mentioned.

For that purpose the covenant is entirely void, both under our statute and before its enactment, under the ruling of the court of errors and appeals in *Perkins* v. *Elliott, 8 C. E. Gr. 526.*

Nevertheless, it is quite clear that a married woman may convey her land by way of mortgage to secure her husband's debt. *Campbell* v. *Tompkins, 5 Stew. Eq. 170; S. C. on appeal, 6 Stew. Eq. 362; Merchant* v. *Thompson, 7 Stew. Eq. 73.*

It follows, that if the mortgage had recited a debt from the husband to the complainants, instead of one from the wife, which did not exist, an entirely different question would have arisen.

But not only does the mortgage contain no such recital, but it does not appear that the wife knew or had any reason to believe that any such indebtedness existed, or that she was giving the mortgage to secure her husband's debt; but the contrary appears affirmatively.

Further: no question arises of estoppel in favor of third parties who have given credit to the firm on the strength of finding this mortgage among its assets. No equities on behalf of the complainants have intervened, unless the permitting of Cronk to remain in the firm may be considered as such. I think it does not raise an estoppel.

It is quite plain that the firm never made any profits, in the proper sense of the term, while Cronk was a partner which should be applied in payment, *pro tanto,* of the mortgage, for I think that a proper allowance for the living expenses of the partners, in lieu of salary and by way of compensation for services rendered, was a proper charge against the apparent profits mentioned as being credited to them.

If, however, I am wrong in this view, the result is the same, for it is quite in accord with the understanding testified to by Mr. Bliss that the whole of Cronk's overdraft, at the date of the mortgage, should be paid out of the profits before the mortgage was surrendered, and that overdraft was twice what the supposed profits afterwards amounted to.

The result of the evidence is that from complainants' standpoint it is quite consistent with justice and equity that the

mortgage should be enforced.   But this does not include the whole case.   On the contrary, from the defendant's standpoint, it is equally clear that it should not be enforced.

The complainants insisted at the hearing and in argument—and at the hearing I was inclined to adopt the view—that the defendant could not be permitted to set up the representations made to her as an inducement to execute the instrument; but, upon consideration, I have changed my mind.   The mortgage, on its face, contained a false recital, which ought to have attracted the attention of Mr. Bliss, namely, that Mrs. Cronk was indebted to the firm and gave that mortgage to secure her indebtedness.

As I have said, that rendered the mortgage, in the absence of circumstances to create an estoppel, unenforceable between the parties.

Some other ground must be found for its enforcement.   The only other ground suggested, or that can be suggested, is that it was given to secure the husband's debt for that amount.

Now I think it entirely competent for the wife to show that she did not consciously give it for any such purpose.   And I think this is so even if the burden does not rest on the complainants, as I think it does, to show affirmatively that it was so given; hence, it seems to me that the circumstances under which it was given are clearly competent, and I think that if any fraud was practiced upon or misrepresentations made to Mrs. Cronk which induced her to execute the instrument, the complainants must take it subject to any defence which arises out of such misrepresentations.

As we have seen, they advanced nothing on the strength of it. They do not occupy the position of *bona fide* purchasers, and they are subject to the general principle that a party, however innocent, in the absence of estoppel, cannot claim through the fraud or misrepresentation of another.

But independent of that principle, I think that it was the duty of the complainants, under the circumstances of this case, to see to it that the wife executed this mortgage with a full understanding of the effect of so doing.

There are express authorities in favor of this view.

In the case of *Michener* v. *Cavender, 2 Wright 334,* which was a *scire facias,* by mortgagee against mortgagor, corresponding with our proceedings to foreclose, the mortgage was given by the wife to secure a debt, whether of the husband or of the wife, or for money loaned, does not appear. It was delivered by the husband, in the absence of the wife, to the mortgagee, and purported to be executed by the wife and properly acknowledged by her before an alderman of the city of Philadelphia, who had authority for that purpose. In point of fact, the alderman had signed the certificate of acknowledgment, filled up in the ordinary form and covering the acknowledgment by the wife as well as the husband, without seeing the wife, before she had, in fact, executed the mortgage, and it was shown that she never did acknowledge it. It was held that those facts could be relied upon in defence of the *scire facias,* and that it was the duty of the mortgagee to have seen to it that she had executed it, in accordance with the requirements of the statute, and that he could not rely upon the mere certificate of the acknowledging officer.

Then, in *Cridge* v. *Hare, 2 Outerb. 561,* which was also a *scire facias,* by mortgagee against mortgagor, the circumstances were that Hare, the mortgagee, proposed to sell and convey to a Mrs. Workman certain chattels, by a bill of sale which gave time for the payment; and Cridge induced his wife to execute a mortgage to Hare to secure the payment of the consideration money mentioned in the bill of sale, upon his representation to her that the goods were conveyed and the bill of sale made to him (Cridge), and concealing from her the fact that the chattels were to be conveyed to Mrs. Workman. The trial judge excluded an offer to make proof of this, and in the end directed a verdict for the plaintiff. The supreme court reversed the judgment, and held that Mrs. Cridge was entitled to prove her husband's representations made to her as an inducement to the execution of the mortgage, although those representations were not made in the presence, or by the authority, or with the knowledge, of Mr. Hare, or any person in his behalf. It held distinctly that the fact that Mr. Hare had taken the mortgage as collateral security for the payment by Mrs. Workman to him of the consideration money mentioned in the bill of sale did not raise an estoppel to prevent

the wife from setting up the true facts accompanying the execution of the mortgage.

The case is on all-fours, in principle, with, and goes beyond, that before the court, and I think it was rightly decided.

It is to be observed here that the representations made by the husband to the wife in this case are quite consistent with the actual facts as testified to by Mr. Bliss; and it is quite easy to believe that the husband felt entirely justified in making them, and that he practiced no fraud upon his partner, and, if so, then none on his wife.

The result is that the proofs show that the mortgage was made for a temporary purpose, and, in effect, as a loan, without any expectation that it was to be enforced, and it should not be enforced.

I will advise that the bill be dismissed, with costs.