263 N.J. Super. 388 (1993)
622 A.2d 1353
GREAT FALLS BANK, PLAINTIFF,
v.
JOSEPH PARDO, SAMUEL PETRACCA, A/K/A SAM PETRACCA AND SAMUEL S. PETRACCA AND MARIA PETRACCA A/K/A MARIA D. PETRACCA, JOHN F. KENNEDY MEDICAL CENTER, AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Union County, General Equity.
January 27, 1993.
*391 Scott John Fitzgerald for plaintiff Great Falls Bank.
Aldan O. Markson for defendant Joseph Pardo.
Randal C. Chiocca for defendant Samuel Petracca.
BOYLE, P.J.Ch.
This motion for reconsideration focuses on the novel issue of whether the court should have granted summary judgment to a mortgagee bank, when the defaulting mortgagor's co-partners fraudulently induced him to give to the bank (1) a guaranty covering the co-partners' prior debt and (2) a mortgage to secure his guaranty  both in exchange for an interest in the co-partners' real estate venture.
Plaintiff, Great Falls Bank ("Great Falls"), brought this action against defendants, Joseph Pardo ("Pardo"), Samuel Petracca ("Petracca"), and others, to foreclose a real estate mortgage. On December 28, 1992, the court granted plaintiff's motion for summary judgment. Pardo now asks the court to reconsider its ruling.

I.
In late 1987 or early 1988, Frank Paparatto ("Paparatto"), Petracca, and Ciro Spinella ("Spinella") agreed to acquire certain land, construct family residences thereon, and sell the same for profit, which they agreed to share as follows: Paparatto  *392 60%; Petracca  20%; and Spinella  20%.[1] On June 8, 1988, the partners borrowed $350,000 from Great Falls to help finance this project and executed a promissory note. To secure the loan, (1) the three partners and their wives executed guaranties, (2) Petracca, Spinella, and their wives executed mortgages, and (3) Paparatto pledged a $100,000 certificate of deposit.
In late 1988, Pardo acquired a fourteen percent interest in this venture. In exchange for same, Pardo (1) contributed $176,000, (2) gave a guaranty to Great Falls on January 6, 1989 covering the funds borrowed by the three partners,[2] and (3) executed a mortgage to Great Falls on June 16, 1989 to secure his guaranty. On June 22, 1989, plaintiff released Paparatto's certificate of deposit in exchange for Pardo's mortgage.
On January 21, 1990, the bank extended the loan for one year and the partners executed a renewal promissory note to plaintiff. The four partners, including Pardo, signed the note as principal obligors and listed the Pardo, Petracca, and Spinella mortgages as security. On August 16, 1990, plaintiff filed suit because the partners failed to pay required monthly interest payments.
On November 14, 1990, the partners executed another renewal promissory note to plaintiff. This time, plaintiff dismissed the lawsuit and extended the loan for another year. The four partners again signed the note as principal obligors and listed the mortgages as security. On the same date, Pardo and Petracca also executed mortgage modification and extension *393 agreements. Both the promissory note and the modification and extension agreements stated that plaintiff may release any party or collateral without affecting the liability of the mortgagors or debtors.
On June 28, 1991, plaintiff released Ciro and Maria Spinella from their obligations and discharged their mortgage. In exchange therefor, the Spinellas paid off twenty-five percent (25%) of the loan balance. Because the remaining debtors did not pay the $262,500 balance when the loan matured, Great Falls instituted this foreclosure action.
On December 18, 1992, plaintiff moved for summary judgment. In opposition to this motion, Pardo contended that the bank was merely a third party beneficiary of Pardo's promise to guarantee and secure the partners' debts. He further contended that, according to third party beneficiary principles, the mortgage was void because Paparatto and Petracca fraudulently induced him to execute it. Pardo also maintained that, for several reasons, the mortgage was void because it did not secure a valid, subsisting debt. He contended that the underlying debt was unenforceable because (1) plaintiff released a principal obligor, (2) his partners fraudulently induced him to execute it, and (3) it lacked consideration. Alternatively, Pardo asked the court to delay the enforcement of the foreclosure judgment until plaintiff enforces its mortgage against Petracca.
In response, plaintiff contended that Pardo's mortgage was not a third party beneficiary contract because Pardo had become a principal obligor on the note. The court rejected this argument because, based on the deposition testimony of plaintiff's vice-president Glenn Durr ("Durr"), an issue of fact existed as to whether Pardo and Great Falls intended to change Pardo's status from guarantor to principal obligor. Nevertheless, the court concluded that Pardo was liable on the mortgage even if he remained a guarantor and, therefore, granted summary judgment in favor of plaintiff. Pardo contends that the court erred in this respect.

*394 II.
The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises. See Central Penn Nat'l. Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 302, 448 A.2d 498 (App.Div. 1982); Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37, 89 A.2d 275 (App. Div. 1952). With the foregoing in mind, the court will address each issue separately.[3]

A. Paparatto and Petracca's alleged fraud vis a vis the mortgage

Pardo's first contention is that, based on third party beneficiary principles, the fraud must be imputed to Great Falls. Pardo argues that the bank, as a third party beneficiary of his promises to the partners, is subject to any defenses that he may have against the partners. In support thereof, Pardo cites the New Jersey Supreme Court case of Continental Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 459 A.2d 1163 (1983), wherein the Court held that third party beneficiary principles apply to mortgages when a "stranger to the debt" gives a mortgage to a bank to secure another's debt.[4]
*395 While Pardo accurately asserts that fraud perpetrated by a promisee excuses the performance of a promisor vis a vis a third party beneficiary, see Restatement (Second) of Contracts § 309, comment a (1981), it is clear to this court that the Pardo mortgage was not a third party beneficiary contract. Pardo gave the mortgage to Great Falls to secure his guaranty plus any renewals and extensions thereof. Thus, he gave a mortgage to secure his own debt and not the debt of the partners. Accordingly, Pardo was not a "stranger to the debt" and the mortgage was not a third party beneficiary contract.
Therefore, Pardo is in the identical position as any other mortgagor who was defrauded by a co-party or third person. Unless he is able to show that plaintiff, as mortgagee, either participated in or had knowledge of any fraud perpetrated by the mortgagors, Pardo's fraud claim is of no moment in this foreclosure action. See Lesser v. Strubbe, 67 N.J. Super. 537, 545, 171 A.2d 114 (App.Div. 1961), aff'd, 39 N.J. 90, 187 A.2d 705 (1963); 30 New Jersey Practice, The Law of Mortgages § 294, at 186 (Cunningham & Tischler 1991).
Pardo lists five bases upon which the alleged fraud should be imputed to Great Falls. First, Pardo maintains that Petracca and Durr disagree about how the transaction originated. Durr maintains that he mailed the mortgage documents when Petracca called him and requested that Great Falls release Paparatto's certificate of deposit in exchange for Pardo's mortgage. Petracca denies that he requested the substitution of collateral and contends that he only called Durr to confirm Paparatto's similar request. Second, Pardo asserts that Durr knew of a conflict that existed between Paparatto and Pardo. Although *396 Pardo does not know how his signature got on the mortgage, he admits that it is his signature. Paparatto contends that he told Pardo never to sign anything. Third, Pardo maintains that Durr knew that Pardo was a guarantor and not a principal obligor. Fourth, Pardo contends that only Petracca witnessed Pardo's signature. Finally, Pardo argues that Paparatto or Petracca acted as plaintiff's agent to obtain Pardo's signature, because Durr mailed the documents at Petracca or Paparatto's request and accepted them when they were returned with Pardo's signature. For these reasons, Pardo contends that factual issues exist as to plaintiff's involvement in the alleged fraud.
Pardo raises no such issue. Petracca and Durr's recollection of the transaction's origination is irrelevant because neither version raises an issue of fact as to plaintiff's involvement in any untoward activity. The conflict between Pardo's signing of the document and Paparatto's directive not to sign anything is equally inconsequential. Pardo's assertion merely evinces that the partners' left hands did not know what the right hands were doing. Moreover, even if the partners tricked Pardo into signing the mortgage, this does not impact on the question of whether plaintiff was involved in any fraudulent activity. Pardo's contention that Durr knew that Pardo was only a guarantor also is not germane to this issue. Guarantors commonly give mortgages to satisfy their guaranties. Because Pardo was a partner in this venture, it was reasonable for him to do so. The court also knows of no authority that says that plaintiff must require additional persons to witness a mortgagor's signature. And the court cannot fathom how a partner can become the bank's agent because plaintiff mailed the documents when requested by a partner and accepted them when they were returned with another partner's signature. Thus, because Pardo has not furnished a scintilla of evidence that Great Falls participated in or had knowledge of any fraudulent activity, the alleged fraud perpetrated by Paparatto and Petracca does not render the mortgage unenforceable.

*397 B. Attacks on the validity of the underlying debt

Pardo's next contention is that, for three separate reasons, the mortgage is void because it does not secure a valid, subsisting debt. The court agrees with the general premise of Pardo's argument, i.e., if the guaranty agreement is unenforceable, the mortgage that was executed to secure it also must fall. This is because the mortgage is merely security for the debt and without a subsisting debt or obligation, the mortgage has no efficacy. Thus, when the underlying obligation fails, the mortgage becomes a nullity. See Grennon v. Kramer, 111 N.J. Eq. 337, 340-41, 162 A. 758 (E. & A. 1932); Mardirossian v. Wilder, 76 N.J. Super. 37, 40, 183 A.2d 761 (Ch.Div. 1962); Weinberg v. Weinberg, 118 N.J. Eq. 97, 98, 177 A. 844 (Ch. 1935); Perkins v. Trinity Realty Co., 69 N.J. Eq. 723, 727, 61 A. 167 (Ch. 1905); Bliss v. Cronk, 62 N.J. Eq. 496, 501, 50 A. 315 (Ch. 1901); Magie v. Reynolds, 51 N.J. Eq. 113, 117, 26 A. 150 (Ch. 1893); In re Kennedy Mortg. Co., 17 B.R. 957, 965 (Bankr. D.N.J. 1982).

1. Paparatto and Petracca's alleged fraud vis a vis the guaranty

Pardo's first of three contentions is that plaintiff is merely a third party beneficiary of his promises to the partners and that, based on third party beneficiary principles, the guaranty he gave to plaintiff is unenforceable because Paparatto and Petracca fraudulently induced him to execute it. To decide this issue, the court first must ascertain what type of agreement exists between Pardo and Great Falls.
If Pardo had merely promised his partners to pay their debt in exchange for an interest in the venture, then he and his partners would have formed a contract and Great Falls would have been the third party creditor beneficiary thereof. See Restatement (Second) of Contracts, supra, at § 304, comment c, illustration 1. However, Pardo gave a guaranty directly to plaintiff. Pardo and Great Falls created a "contract of guaranty," *398 whereby Pardo was the "guarantor," Great Falls was the "guarantee," and the three partners were the "principal obligors."[5] Plaintiff now endeavors to enforce its rights as a guarantee and mortgagee, not as a third party creditor beneficiary.
Again, any fraud perpetrated by the partners is of no moment unless Great Falls had knowledge thereof or participated therein, because the guarantee (Great Falls) is not responsible for any misrepresentation or deception practiced by the principal obligors (the partners) to induce the guarantor (Pardo) to execute the contract of guaranty. See Lesser v. Strubbe, supra, 67 N.J. Super. at 545, 171 A.2d 114; 38 C.J.S., Guaranty, supra, at § 32. Because there is no evidence that plaintiff had any knowledge of or participated in any fraudulent activity, the mortgage secures a valid, subsisting debt.

2. The release of Spinella

Pardo also contends that the guaranty is unenforceable because plaintiff released Spinella, a principal obligor on the debt. The release of a principal obligor, without consent of the guarantor, discharges the guarantor's obligation. See Township of Berkeley v. Republic Ins. Co., 194 N.J. Super. 407, 414, 477 A.2d 346 (App.Div. 1983); 38 C.J.S., Guaranty, supra, at § 83. This is because the guarantor's right of subrogation as to the full amount of the obligation against each principal obligor is destroyed. 38 Am.Jur.2d, Guaranty § 127 (1992).
Pardo cannot be released from his guaranty obligation because he consented to Spinella's release. The guaranty signed by Pardo states:
EVENTS NOT AFFECTING THE GUARANTY: I agree that my liability under this guaranty will not be limited or canceled because:

*399 ... 3. You release or exchange any collateral that the Borrower may have given you or you do not fully establish your security interest; ...
5. You release any other guarantor of the Borrower's Obligations; ... and/or
7. Anything else happens that may affect your rights against the Borrower or any other guarantor.
The court recognizes that the guaranty does not specifically provide for the release of a principal, although it does provide that plaintiff may, without affecting Pardo's liability, release collateral and other guarantors, and "affect [Pardo's] rights against the Borrower." While subsection 7 probably establishes that Pardo consented to Spinella's release, it is important to note that Pardo consented to the same in another document.
On November 14, 1990, Pardo consented to the release of any principal obligor in the renewal promissory note.[6] Pardo neither disputes that he executed this document nor eschews any term contained therein. Although the court must construe the facts in the light most favorable to Pardo, it cannot pretend that Pardo never executed this note. The court can only assume that he executed it as guarantor, and as such, he still is bound by the same terms. Thus, because he consented to the release of Spinella, Pardo is not discharged from his guaranty obligation. Accordingly, the court cannot declare the guaranty unenforceable and Pardo's argument that the mortgage does not secure a valid, subsisting debt fails.

3. Consideration for the guaranty

Finally, Pardo contends that the guaranty is unenforceable because it lacked consideration.[7] Pardo maintains that he *400 requested and received nothing from plaintiff in exchange for his guaranty or mortgage. In support of his contention, Pardo refers to the following deposition testimony of Durr:
Question: "Now, did you do anything to obtain that guaranty? Did the bank give up anything to obtain that guaranty from Mr. Pardo?"
Answer: "No."
Plaintiff essentially concedes that it initially gave nothing to Pardo in exchange for the guaranty. However, plaintiff contends that it (1) released Paparatto's certificate of deposit, (2) twice renewed and extended the loan, and (3) dismissed the lawsuit  each in reliance upon Pardo's guaranty, mortgage, and note. Plaintiff argues that, because Pardo's guaranty was of a "continuing" nature, the guaranty and mortgage were supported by this subsequent consideration. Alternatively, plaintiff contends that, for the same reasons, Pardo should be estopped from raising the lack of consideration as a defense.
If the guaranty lacked consideration, it was merely an unenforceable gratuitous promise, 29 New Jersey Practice, The Law of Mortgages, supra, at § 32, and the mortgage that secures it must be declared void.[8] Because the guaranty and the loan were not executed at the same time as part of the same agreement, the guaranty "must be supported by separate *401 consideration moving to the guarantor or the renunciation of something substantial [by the guarantee]." S. Kosson & Sons v. Harris, 108 N.J.L. 162, 166, 154 A. 726 (E. & A. 1931); 38 C.J.S., Guaranty, supra, at § 26. A mere promise to pay an antecedent debt of another is not generally regarded as consideration for a guaranty. Grant v. Southtrust Bank of Baldwin County, 512 So.2d 914, 916 (Ala. 1987). However, either a slight benefit to the promisor or a trifling inconvenience to the promisee suffices. Ross v. Realty Abstract Co., 50 N.J. Super. 147, 153, 141 A.2d 319 (App.Div. 1958). Most importantly, it is unnecessary that any consideration pass directly from the guarantee (Great Falls) to the guarantor (Pardo), and any consideration moving from the original obligors (the partners) to the guarantor (Pardo) is sufficient to support the guaranty contract. 38 C.J.S., Guaranty, supra, at § 26. See also The Coast National Bank v. Bloom, 113 N.J.L. 597, 602, 174 A. 576 (E. & A. 1934) (general contract law); Massey v. Del-Valley Corp., 46 N.J. Super. 400, 404, 134 A.2d 802 (App.Div. 1957) (general contract law); Laing v. Lee, 20 N.J.L. 337, 339 (Sup.Ct. 1845) (contract of guaranty); United States v. Glover, 453 F. Supp. 659, 663-64 (W.D.Okla. 1977) (contract of guaranty); National Refining Co. v. McDowell, 201 S.W.2d 342, 348 (Mo. 1947) (contract of guaranty).
Because it is legally sufficient that the consideration run from the principal obligors to the guarantor rather than from the guarantee, the fourteen percent interest that Pardo received from the partners is sufficient consideration to support Pardo's guaranty.[9] And because Pardo's guaranty is enforceable, *402 his mortgage that secures the same remains intact. Thus, the court properly granted plaintiff's motion for summary judgment.

C. Stay enforcement of Pardo's mortgage until bank proceeds against Petracca's property

Alternatively, Pardo asks the court to stay the enforcement of his mortgage until plaintiff first enforces its mortgage against Petracca. In support of this request, Pardo cites Kotler v. John Hancock, 113 N.J. Eq. 544, 546, 168 A. 36 (Ch. 1933), wherein the court held that courts have the discretionary power to stay enforcement of a foreclosure judgment "in such a manner as to prevent an injustice."
Clearly, the court must consider not only Pardo but also Great Falls, which has every right to enforce its contractual rights as creditor, guarantee, and mortgagee. Great Falls currently holds two mortgages. Without any evidence that it participated in any wrongdoing or precipitated this situation, the court cannot conceive of how it can order the mortgagee to forego the enforcement of one mortgage until it enforces another. If mortgagors are able to circumscribe a mortgagee's bargained for rights whenever a deal goes bad, or whenever one mortgagor cheats or mistreats another, real estate financing would cease to exist. While the court may in certain circumstances stay the enforcement of a foreclosure judgment to prevent an extraordinary injustice, it does not wield the power to create injustice. Because there is no evidence that plaintiff participated in or had knowledge of any fraudulent activity, a circumscription of its contractual rights will do just *403 that. Therefore, the court must deny Pardo's request to stay the enforcement of the foreclosure judgment against him.

III.
For the foregoing reasons, Pardo's motion for reconsideration is denied.
NOTES
[1] Although no shares of stock were issued, the three partners utilized 515 Realty Corp., a New Jersey corporation, as their instrumentality for carrying out the project.
[2] On December 30, 1988, Petracca wrote to Great Falls and advised the bank that Pardo was now involved in the venture and would become a guarantor on the note. Pardo signed the letter and stated that, "I, Joseph Pardo, confirm and certify that I am a participating partner and shareholder in 515 Realty Corp. and that I will participate in all obligations of the mentioned corporation."
[3] As in the motion for summary judgment, the court must construe the facts in the light most favorable to Pardo. Therefore, the court will assume that Pardo remained at all times only a guarantor and that Paparatto and Petracca fraudulently induced Pardo to execute the guaranty and mortgage.
[4] Therein, a corporation, STE, and its shareholder, Shulman, were indebted to a bank, Continental. Shulman was also the sole shareholder of another corporation, Barclay. Continental met with Shulman and requested a mortgage on Barclay's real estate to secure STE's and Shulman's pre-existing debts. Shulman, acting as Barclay's sole shareholder, agreed. Thus, Barclay gave a mortgage to Continental to secure the obligation of STE and Shulman, the third parties beneficiaries. The Court considered this a third party beneficiary contract. Clearly, Barclay was the promisor. Although Pardo argues that STE and Shulman were the promisees and that Continental was the third party beneficiary, a careful reading of the decision clearly demonstrates that the bank was the promisee and the debtors were the third party beneficiaries. For example, the Court stated that "[a]s long as a contract is bargained for by the promisee, it is immaterial that the benefit runs to a designated third party beneficiary." Continental Bank of Pa., 93 N.J. at 171, 459 A.2d 1163. The Court then explained that Continental, as promisee, had given consideration, and that Barclay and Shulman, as third parties, had benefitted. Id. at 171-73, 459 A.2d 1163.
[5] A guaranty is a separate and independent contract. The guarantor is not a party to the contract between the principal obligor and the guarantee, and the principal obligor is not a necessary party to the contract of guaranty. 38 C.J.S., Guaranty §§ 1, 2 (1992).
[6] Pardo also consented to the same in the mortgage modification and extension agreement.
[7] The court will only address the consideration for the underlying debt and not the mortgage itself, even though plaintiff released Paparatto's certificate of deposit in exchange for the mortgage. Although courts have sometimes held that a mortgage is invalid unless it is supported by consideration, this position technically is incorrect. Generally, a mortgage is valid without consideration. 5 Tiffany, Real Property § 1401, at 277 (1993). Indeed, the common law mortgage was fully recognized hundreds of years before the doctrine of consideration was ever developed. Ibid. However, the position that a mortgage requires no consideration is misleading because the mortgage is merely security for an underlying debt, which does require consideration.
[8] Courts and commentators disagree about whether or not consideration is required when the promise and mortgage are intended as a gift. 29 New Jersey Practice, The Law of Mortgages, supra, at § 32. See also In re Derrico, 90 N.Y.S.2d 889, 891 (Surr.Ct.West.Cty. 1949); Coon v. Shry, 209 Cal. 612, 289 P. 815, 816 (1930); 5 Tiffany, Real Property, supra, at § 1401. However, if the intention, as in this case, was to create a binding obligation and to secure it by a mortgage, but the effort fails due to lack of consideration, the mortgage fails because it merely purports to secure a debt, which is non-existent. See Glenn, Mortgages § 5.6, at 32-33 (1943); Walsh, A Treatise on Mortgages §§ 14, 17, at 76-77, 89-90 (1934).
[9] Moreover, even if the guaranty lacked consideration, Pardo should be estopped from asserting the same as a defense. Four separate elements must be proved to justify the application of the doctrine of promissory estoppel. First, the promisor must make a clear and definite promise. Second, it must be made with the expectation that the promisee will rely on it. Third, the promisee must reasonably rely on the promise. Finally, the promisee must incur a detriment in reliance thereon. The Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463, 479, 395 A.2d 222 (App.Div. 1978).

Pardo made a clear and definite promise to guarantee the debt of his partners when he executed the contract of guaranty. Pardo must have intended that Great Falls would rely on same, and plaintiff did so when it released collateral, extended and renewed the loan, and dismissed the lawsuit. Because the debt that Pardo guaranteed remains unpaid, plaintiff has incurred a detriment in reliance upon Pardo's promise. Accordingly, Pardo should be estopped from asserting the lack of consideration as a defense.