**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2100-18T4

BANK OF CHINA, NEW YORK
BRANCH,

    Plaintiff-Respondent,

v.

769 ASSOCIATES, LLC,

    Defendant-Appellant,

and

PAUL V. PROFETA,

    Defendant.

_____

Argued October 29, 2019 – Decided October 8, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-018512-17.

Marc J. Gross argued the cause for appellant (Fox Rothschild LLP, attorneys; Marc J. Gross, of counsel and on the briefs; Christine F. Marks, on the briefs).

Joseph Lubertazzi, Jr., argued the cause for respondent (McCarter & English, LLP, attorneys; Joseph Lubertazzi, Jr., of counsel and on the brief; Danielle Weslock, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This is a commercial foreclosure case. Defendant-mortgagor 769 Associates, LLC ("769") appeals from a final judgment of foreclosure, contending that the court erred in striking 769's answer and affirmative defenses and dismissing its counterclaim. In addition, 769 contends that the court erred in entering an order voiding 769's leases with three tenants.

We affirm.

In 2007, the Bank of China made multi-million-dollar, interest-only loans to three limited liability companies: 769, 349 Associates, LLC ("349"), and LVP Associates, LLC ("LVP"). Paul V. Profeta controlled all three companies. The bank loaned $14.35 million to 769, secured by a mortgage on a commercial office building at 769 Northfield Avenue in West Orange. It also loaned $10.5 million to 349 and $7.35 million to LVP, secured by mortgages on buildings in Livingston and Maplewood, respectively. In 2010, in settlement of a separate dispute, the parties amended the loan documents to provide that the mortgages

on LVP's and 349's properties would serve as additional security for the 769 loan. All three mortgage loans had maturity dates of July 1, 2017.

The bank, in its foreclosure complaint, alleged that 769 defaulted by failing to repay the principal amount when due. The bank alleged other defaults, but it ultimately proceeded on the theory of a maturity-date default.

In its responsive pleading, 769 alleged that months before the maturity date, the bank took a series of steps — including alleging defaults by 769 unrelated to its payment obligations — to stymie 349's and LVP's attempts to prepay their loans, secure discharge of their mortgages, and sell their respective properties at a handsome profit.[1] Those allegations evidently underlie 769's affirmative defenses, which state that the bank's unclean hands and its breach of

---

[1] In a separate federal lawsuit, LVP and 349 unsuccessfully sought a declaratory judgment that the bank had to discharge the two companies' mortgages upon prepayment, notwithstanding the bank's allegation of 769's pre-maturity defaults. See LVP Assocs. L.L.C. v. Bank of China, New York Branch, 17-cv-5274 (SHS), 2017 U.S. Dist. LEXIS 190188 (S.D.N.Y. Nov. 16, 2017). The court agreed with LVP and 349 that they were entitled to prepay their loans, rejecting the bank's position that it could apply those payments to the 769 loan; but the court also held that the bank was entitled to refrain from discharging the LVP and 349 mortgages if 769 were in default. The court did not resolve whether, as the bank contended, 769 was actually in default before the maturity date. We assume the reader's familiarity with the relevant provisions of the loan documents and the federal court's discussion of the dispute over LVP's and 349's repayment rights.

the loan documents barred its claims.[2] Those same allegations form the basis of 769's counterclaim, which seeks a declaration that the bank not only breached the loan agreement and the duty of good faith and fair dealing, but also tortiously interfered with 769's contractual rights and economic advantage. In its prayer for relief, 769 demanded damages and specific performance of the loan agreements.

The trial court concluded that 769's allegations of wrongdoing might support claims or defenses by LVP or 349, but that they were no defense to 769's maturity-date default. Additionally, those allegations provided no basis for a germane counterclaim against the bank. As the court noted, 769 did not allege that the wrongs against LVP and 349 caused 769's maturity-date default.

We review de novo the court's decision to dismiss counterclaims for failure to state a claim under Rule 4:6–2(e). See Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citation omitted). The same standard of review governs the decision to strike pleadings under Rule 4:6–5. Applying that standard, we discern no error by the trial court.

---

[2] We say "evidently" because the affirmative defenses themselves are not supported, as Rule 4:5-4 requires, by a separate and specific statement of facts.

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994) (citations omitted). A plaintiff is entitled to an order under Rule 4:6-5 striking an answer that fails to challenge these essential elements. See Old Republic Ins. Co. v. Currie, 284 N.J. Super. 571, 574 (Ch. Div. 1995) (citation omitted).

Despite extending to 769 all favorable inferences, see Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citation omitted), we conclude that the bank's alleged inequitable conduct does not affect its right to foreclose against 769. Although 769 argues the LVP's and 349's prepayment "could have enabled 769 to avoid a maturity default or . . . significantly reduce any sums due," neither the affirmative defenses nor the counterclaims allege that the bank caused 769's maturity-date default, either by declaring other defaults before maturity or by interfering with LVP's and 349's opportunity to profitably sell their properties. We have searched 769's pleadings in vain for an allegation that the other two entities would have transferred their sale proceeds to 769, and that they would have done so in sufficient measure to avoid the maturity-date default.

Therefore, 769's defense differs from the borrower's defense in <u>Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co.</u>, 137 N.J. Super. 353 (App. Div. 1974), a case on which 769 heavily relies. The mortgagor in that case alleged in an answer and counterclaim that the lender caused it to default by making false representations to the local planning board. <u>Id.</u> at 356. As a result of these false representations, the board denied the mortgagor the approvals it needed to develop its property and secure funds for payment. <u>Id.</u> at 356. We held that the mortgagor's counterclaim was germane because it alleged that the lender's breach interfered with the mortgagor's rights under their agreement. <u>Id.</u> at 358.

Here, as noted, 769 alleges that the bank's breach interfered with LVP's and 349's rights, not with its own. Therefore, even assuming 769 has standing to seek relief for LVP's and 349's damages, its counterclaim was not germane and was therefore subject to dismissal. <u>See</u> <u>R.</u> 4:64–5 (providing that "[o]nly germane counterclaims . . . may be pleaded in foreclosure actions without leave of court").

We also reject 769's argument that the court should have denied the bank's motion because the bank may have had unclean hands. No doubt, foreclosure is an equitable remedy subject to the unclean hands defense. <u>N.J. Bank v. Azco</u>

6

Realty Co., 148 N.J. Super. 159, 166 (App. Div. 1977) (citation omitted).  Yet the defense is an equitable one, vested in the court's discretion.  Capparelli v. Lopatin, 459 N.J. Super. 584, 611 (App. Div. 2019) (citation omitted).  We discern no abuse of discretion here; 769 has not shown that the bank's allegedly inequitable conduct undermined its ability to perform.  The unclean hands doctrine "does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainants."  Untermann v. Untermann, 19 N.J. 507, 517 (1955) (quoting Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922)).  Rather, only "evil practice or wrong conduct in the particular matter or transaction" forming the basis of a claim will deprive a plaintiff of the "right to justice in a court of equity."  Ibid.

Here, even if the bank unjustifiably declared a pre-maturity default by 769, 769 did not suffer the consequences.  LVP and 349 did.  See Sprenger v. Trout, 375 N.J. Super. 120, 136–37 (App. Div. 2005) (declining to apply the unclean hands doctrine where plaintiff's alleged wrong was against his employer, not against defendants).

Finally, we find no merit in 769's contention that the order striking its defenses should be set aside because the bank filed an untimely motion to

dismiss. According to 769, the bank — contrary to Rule 4:6–5 — filed its motion more than twenty days after service of 769's answer.

However, the bank's late filing is of no moment, because the Rule empowers the court to strike a defense insufficient in law "upon [its] own initiative at any time." In addition, the bank's motion to dismiss the counterclaim was timely — pursuant to an extension to which 769 consented — and the court struck both the counterclaim and the defenses on the same grounds. And 769 points to no prejudice caused by the timing of the motion to strike. Therefore, the trial court did not err in entering the order to strike 769's affirmative defenses.

We now turn to a separate issue: the court's order voiding leases between 769 and three entities that Mr. Profeta controlled — Paul V. Profeta & Associates Inc., PVP Maintenance Corp., and Executive Cleaning Corp. The leases extended the three entities' tenancies by five years and, according to the bank, upon substantially more favorable terms than had existed under the previous one-year lease. The court voided the leases because they were executed not only without the bank's required approval, but also after the court orally ordered the appointment of a rent receiver. The loan documents' default provisions allowed for the appointment of a rent receiver.

8

On appeal, 769 argues that the court's order should be reversed because the bank did not join the tenants, which were indispensable parties. Also, 769 argues that the order should be reversed because the court lacked jurisdiction after it deemed the matter uncontested and referred it to the Office of Foreclosure. We are unpersuaded. Simply put, 769 lacks standing to assert any claim by the tenants that the court wrongly terminated their leases. See In re Six Month Extension of N.J.A.C. 5:91–1 et seq., 372 N.J. Super. 61, 85 (App. Div. 2004) (citation omitted) (stating that "a litigant usually has no standing to assert the rights of a third party"). Furthermore, the Office of Foreclosure transferred the matter back to the trial court two months before the court voided the leases.

To the extent not addressed, 769's remaining arguments lack sufficient merit to warrant discussion. R. 2:11–3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9