**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0142-22

GALEN PUBLISHING, LLC,

    Plaintiff-Respondent,

v.

ASIM HOLDINGS, LLC, ASIM
CE, LLC, ERADIMAGING, LLC,
ELI GLOBAL, LLC, and GREG
E. LINDBERG, individually,

    Defendants-Appellants.

_____

Submitted December 11, 2023 – Decided May 3, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0579-20.

Law Offices of Charles A. Gruen, and William G. Whitehill (Condon Tobin Sladek Thorton Nerenberg, PLLC) of the Texas bar, admitted pro hac vice, attorneys for appellants (Michael Korik and William G. Whitehill, on the briefs).

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for respondent (Stephen Osgood Davis, on the brief).

PER CURIAM

Defendants, buyers of a medical education business and subscription-based, continuing education service for radiologic technologists, appeal from the trial courts' orders of December 30, 2021 and August 4, 2022,[1] granting summary judgment to plaintiff for a sum certain and awarding attorney's fees and costs. Defendants claim the trial court erred in granting summary judgment because a genuine issue of material fact exists regarding defendants' affirmative defense of fraud in the inducement, and the trial court erred in finding defendants were required to pay plaintiff's attorney's fees.[2]

We conclude defendants failed to present any material fact precluding summary judgment. We also conclude the trial court properly analyzed and awarded attorney's fees and, therefore, affirm both orders.

---

[1] The August 4, 2022 order amended a July 14, 2022 order.

[2] Defendants also argue plaintiff failed to prove it was the holder of the note and guaranties in due course. However, that issue was not raised before the trial court, and we decline to address it. State v. Robinson, 200 N.J. 1, 18-19 (2009); Selective Ins. Co. v. Rothman, 208 N.J. 580, 586 (2012).

I.

On March 21, 2017, plaintiff Galen Publishing, LLC (Galen) entered into an Asset Purchase Agreement (APA) with defendants, ASiM Holdings, LLC (ASiM), ASiM CE, LLC, (ASiM CE), and eRADIMAGING, LLC, (eRAD) for the sale of plaintiff's business assets. ASiM, ASiM CE, and eRAD purchased the business assets for $12,858,192.86, pursuant to the terms of the APA. The terms required the buyers to pay $10 million at closing. ASiM gave Galen a $2,091,885.12 promissory note, which required the buyers to make four additional annual payments of $522,971.28. Defendant, Greg E. Lindberg, (Lindberg), signed the APA as a representative of all three defendant-buyers, signed the promissory note as a representative of ASiM, and signed two guaranties of the promissory note. Lindberg signed one guaranty on behalf of Eli Global, LLC (Eli Global), the buyers' holding company, and signed the second guaranty in his individual capacity.

The terms and conditions of the promissory note state, in relevant part:

> If an Event of Default (as defined below) under the terms of this Note shall occur, the entire unpaid Principal Amount, together with all sums due hereunder shall immediately become due and payable. The term "Event of Default" shall mean the occurrence of any one or more of the following events: (i) failure by Maker [ASiM] (and/or Guarantor) in the payment of any and all sums due under this Note and such failure

3

A-0142-22

continues for more than ten (10) business days following written notice thereof from the Holder; (ii) if by order of a court of competent jurisdiction, a trustee, receiver, custodian, liquidator, agent or other similar office of Maker's or either Guarantor's property or any part thereof, shall be appointed and such other shall not be discharged or dismissed within ninety (90) days after such appointments; . . . ; or (v) any breach by either Guarantor under the terms and conditions of the Guaranties. If an Event of Default occurs or this Note is not fully paid by, or on, the Maturity Date, whether as regularly scheduled or through acceleration, the unpaid Principal Amount shall thereafter bear interest until fully paid computed at the rate of the lesser of (i) fifteen (15%) percent per annum or (ii) the maximum rate permitted by applicable law to be charged and payable immediately upon demand by Holder (the "Default Interest").

Regarding attorney's fees, the note stated:

In the event this Note is placed in the hands of an attorney for collection or if collected by suit, or should Holder need to protect or enforce its rights under this Note in any bankruptcy proceedings, then the Maker shall pay, in addition to all other amounts due and owing hereunder, the reasonable attorney['s] fees and all other costs of collection of Holder.

Each guaranty agreement stated:

[u]pon failure of [ASiM] to pay all or any portion of the Guaranteed Obligations (as defined below) when due (and after giving effect to any applicable notice and cure period set forth in the Note), Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Secured Party [plaintiff]: (a) the full, prompt and complete payment when due of the Guaranteed

4

A-0142-22

Obligations, as the same shall become due and payable under the Note, whether at stated maturity, by acceleration or otherwise, and any and all sums of money that, at the time, may have become due and payable under the provisions of the Note, whether secured or unsecured, direct or indirect, absolute or contingent, including payment of principal, interest, expenses and fees (including counsel fees) chargeable to or due from [ASiM] under the Note, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Note Documents and (b) if Secured Party brings a legal action against the Guarantor, or otherwise incurs expenses with respect to a good faith enforcement of the terms and conditions of this Guaranty and prevails, the full, prompt and complete payment of any and all out-of-pocket expenses that may be paid or actually incurred by Secured Party in the collection of all or any portion of the Guarantor's obligations hereunder or the exercise or enforcement of any one or more of the other rights, powers, privileges, remedies and interests of Secured Party under the Note Documents including, without limitation, reasonable attorney['s] fees, and whether or not such expenses constitute part of the Makers' obligations (collectively, the "Guaranteed Obligations").

The agreements also stipulated, in the event plaintiff made a demand for the

full, prompt and complete payment of the Guaranteed Obligations and [Eli Global and Lindberg] actually makes the full and indefeasible payment so demanded to Secured Party within twenty (20) days of demand and without any reservation, condition, defense or claim of any kind or nature, Secured Party agrees that the

5

A-0142-22

> Guaranteed Obligations will be limited to the amounts then due and payable under the Note plus all accrued but unpaid interest thereon.

Lastly, both guaranties were "absolute, unconditional, present, and continuing guaranty of payment of the Guarantee Obligations."

Defendants paid the required annual payments in March 2018 and March 2019, but failed to remit the $522,971.28 payment in 2020. On April 2, 2020, plaintiff sent one letter to defendants, consistent with the agreements, notifying them of the missed payment and demanding immediate payment of the overdue balance. In the letter, plaintiff informed defendants they were required to remit payment within ten days of the letter, and if they failed to comply, plaintiff would consider it a default and proceed with the permitted remedies pursuant to the promissory note and APA.

On April 15, 2020, plaintiff informed defendants that their failure to remit payment was an act of default and accelerated all payments of amounts owed. Plaintiff stated immediate payment of all sums guaranteed by the note, including both the March 21, 2020, and March 21, 2021, payments of $522,971.28 each, and fifteen percent (15%) interest per year on the full unpaid principal amount of $1,045,942.56 were due. The demand letter stipulated the payment of the

6

guaranty obligations must be made within ten days of April 15, 2020. Defendants did not respond to either letter.

On May 18, 2020, plaintiff sued defendants, alleging defendants defaulted under the terms of the promissory note and guaranties of the promissory note. Plaintiff demanded judgment, with interest and attorney's fees pursuant to the default rate in the APA and note. Plaintiff further alleged the guarantors breached the terms of their executed guaranty agreements and requested the same judgment.

On July 17, 2020, defendants filed an answer and four affirmative defenses, claiming (1) plaintiff's complaint failed to state a claim upon which relief may be granted; (2) plaintiff's claims were barred, in whole or in part, based on fraud; (3) plaintiff's claims were barred, in whole or in part, based on failure or lack of consideration; and (4) plaintiff's claims were barred, in whole or in part, based on the doctrine of estoppel.

On May 20, 2021, plaintiff filed a motion for summary judgment. In opposition, defendants filed a certification from ASiM and Eli Global's portfolio manager, Scott Hall (Hall). Hall stated plaintiff provided a 2016 profit and loss statement to defendants, during the due diligence period prior to the acquisition of the business, that showed a 2016 net income of $1,498,253. Hall contended

plaintiffs made material omissions regarding the statements in breach of accounting standards and the statements were not accurate. Hall alleged the business' net income was negative in 2017, 2019, and 2020, which indicated a material omission must have been made. Hall also asserted that had plaintiff accurately represented the financial status of the business, defendants would not have agreed to the terms of the APA, promissory note, or guaranties. Lastly, Hall stated ASiM could no longer afford to make annual note payments because of the disastrous effects of plaintiff's fraud and the COVID-19 pandemic.

On October 8, 2021, the trial court heard oral argument regarding the motion for summary judgment and defendant's motion to extend discovery. In an order and oral statement of reasons issued on December 30, 2021, the trial court granted summary judgment to plaintiff.

The court noted defendants made three arguments. First, defendants argued during the due diligence period, plaintiff made misrepresentations about the health of the business. They claimed they were fraudulently induced, specifically claiming there were inaccurate financial representations from plaintiff by "pointing to a . . . dramatic loss of value in the subsequent years after the sale." Second, defendants claimed the pandemic prevented them from making the annual payments and "even if a contract does not expressly provide

8

[a] force majure [sic] clause, if an unfor[e]seen condition arises that makes performance impractical, a court can relieve a party of that duty of performance [as it] unexpectedly bec[a]me impossible, pointing to <u>Facto v. Pantagis</u>, 390 N.J. Super. 227[, ]231 (App. Div. 2007)." Third, ASiM CE and eRad were not parties to the promissory note or guaranties and should be dismissed entirely.

The court determined there were "no facts alleging fraud, or ple[a]d with particularity, as required, nor [were facts] set forth in the opposition papers with particularity." Rather, it found, defendants made "[j]ust a general statement repeating the income loss." The court held that the terms and conditions of the promissory note were clear and unequivocal. Specifically:

> [plaintiff] received a promissory note from ASiM in the principal amount of $2,091,885.12, securing the balance of the purchase price of assets, which were the subject of the asset purchase agreement. The note between [plaintiff] and ASiM contains straightforward financial payment obligations, with specific time frames. The note clearly identifies that any deviation from the time that payments are due is a breach of the agreement.
>
> The record is clear that after the asset purchase agreement was entered into, in accordance with the terms of . . . the agreement, payments were made to [plaintiff], under the terms of the note, up and until March of 2020. Clearly, at that point, [defendants] stopped making payments and failed to satisfy its obligations under the note.

A-0142-22

In its analysis, the court determined there was no material dispute of fact regarding the guaranties, no factual dispute defendants breached their obligations, and defendants did not provide a legal or factual basis for failing to make the required payments. Defendants did not respond to the demand for immediate payment and the note terms were clear. Additionally, it concluded the guarantors executed valid guaranties and were clearly in breach. The court found there was no material dispute of fact and defendants did not have a valid defense "other than general denials and some vague unspecified fraudulent claim, without any facts whatsoever."

The court held plaintiff was entitled to summary judgment against ASiM, Eli Global, and Lindberg[3] and ordered defendants to pay the remaining unpaid principal amount of $1,045,942.50 and fifteen percent (15%) interest. Additionally, the trial court held defendants were obligated to pay plaintiffs' attorney's fees and costs and directed plaintiff to submit an affidavit of its fees.

On March 3, 2022, plaintiff filed an affidavit of services and documents in support of its application for attorney's fees. On March 4, 2022, the court awarded plaintiff attorney's fees and costs in the amount of $75,436 and $2,535.38 respectively. On March 24, 2022, defendants filed a motion for

---

[3] Plaintiff filed a motion stipulating to the dismissal of ASiM CE and eRad.

reconsideration of the court's order and the court granted the motion and scheduled a hearing.

The court's final order was entered on July 14, 2022, and later amended on August 4, 2022. After careful analysis, the court ordered defendants to pay plaintiff's attorney's fees in the amount of $72,696 and costs in the amount of $2,535.38. First, it considered the calculation of reasonable attorney's fees it may award, based on the lodestar analysis.[4] The court then explained it reviewed the affidavit of services in consideration of defendants' objections to certain billing entries and made reductions to the entries. The reductions were what the court considered "the possibility of double billing or in [the] very minor instance of excessive billing." The court made reductions to nine dates between March 2020 and September 2021 and reduced "the requested attorney's fees by the amount of $2,740." It concluded the final amount of attorney's fees of $72,696 and the costs of $2,535.38 were appropriate.

This appeal followed.

II.

We review de novo orders granting summary judgment, applying the same standard that governed the trial court's ruling. Lee v. Brown, 232 N.J. 114, 126,

_____

[4] Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386, 389 (2009).

(2018); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Summary judgment will be granted if, viewing the competent evidential materials in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

We are mindful "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "The practical effect of this rule is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat, 217 N.J. at 38. "When no issue of fact exists, and only a question of law remains, this [c]ourt affords no special deference to the legal determinations of the trial court." Templo Fuente, 224 N.J. at 199.

A-0142-22

A.  Defendants' Fraudulent Inducement Defense.

Defendants argue they alleged a material issue of fact regarding plaintiff's financial statements that precluded summary judgment.  Specifically, defendants contend plaintiff made financial misrepresentations regarding the financial health of the business that induced them to enter the APA and sign the note and guaranties.  Defendants allege plaintiff represented the business's financial position was strong prior to the acquisition, with a net income of $1,498,253.  However, after the acquisition, the net income immediately diminished in the following years.  Defendants argued the drastic loss in value is an indication plaintiff "made material omissions regarding its 2016 financial statements in breach of [accounting] standards and that such statements were not accurate."  As a result, defendants conclude they were fraudulently induced into the Note and guaranties, and that fraud precluded summary judgment.

"In all allegations of misrepresentation [or] fraud . . . particulars of the wrong, with dates and items, if necessary, shall be stated insofar as [is] practicable."  R. 4:5-8(a).  To prevail on a claim of fraudulent inducement, a defendant must demonstrate the five elements of common-law fraud:  "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the [party asserting fraud] of its falsity; (3) an intention that the other

13

[party] rely on it; (4) reasonable reliance thereon by the other [party]; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

Defendants failed to plead this defense with particularity, pursuant to R. 4:5-4 and R. 4:5-8, and failed to put forth specific facts in opposition to summary judgment. Hall's certification contained only unsupported opinions and conclusory statements. Hall's statements and defendants' argument do not specify what the misrepresentations were, which representative made them, which accounting standards were violated, how those violations fraudulently induced defendants, or how those misrepresentations were relied upon by defendants, who had their own obligation to conduct due diligence.

Defendants did not produce evidence to the trial court that would defeat a summary judgment motion and fail to show, on appeal, any particular facts in the record to support their defense. Defendants simply argue the net income loss is an indication there must have been misrepresentation. To demonstrate the existence of a "genuine issue [of] material fact" and survive a summary judgment motion, "the opposing party [must] do more than 'point[ ] to any fact in dispute.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (emphasis omitted) (quoting Brill, 142 N.J. at 529). Defendants failed to sustain their

14

burden of presenting a genuine issue for trial or asserting a defense with specificity; mere allegations will not suffice.

B. Defendants' Breaches.

Defendants do not dispute that ASiM, ASiM CE, and eRAD executed the APA with Galen for the purchase of the business. They do not dispute the promissory note is in default. Nor do they contest the existence of the guaranties executed by Lindberg and Eli Global. Defendants fail to present any evidence to the contrary and do not contend otherwise on appeal.

To enforce a promise to be liable for the obligation of another person, the agreement "shall be in a writing signed by the person assuming liability or by that person's agent." N.J.S.A. 25:1-15. "Generally, a guarantor is a different person from the maker or, if the same person, signs in different capacities when signing as maker and guarantor (e.g., an individual may sign as an officer of a corporate maker and also sign individually as a guarantor of the corporate obligation)." Ligran, Inc. v. Medlawtel, 86 N.J. 583, 589 (1981). "A guaranty is a separate and independent contract. The guarantor is not a party to the contract between the principal obligor and the guarantee, and the principal obligor is not a necessary party to the contract of guaranty." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 398 n.5 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542

(App. Div. 1994).  The terms of a guaranty must be read like any other contract, according to its clear terms to manifest the objective expectations of the parties. Housatonic Bank & Tr. Co. v. Fleming, 234 N.J. Super. 79, 82 (App. Div. 1989). Pursuant to the terms of their respective guaranties, Lindberg and Eli Global are liable for the outstanding obligations.

C.  Award of Attorney's Fees and Costs.

Defendants argue the trial judge erred by failing to make all required fact findings needed to support an award of attorney's fees.  Defendants acknowledge the court discussed the reasonableness of the attorney's rates, "the types of services provided," and other RPC 1.5(a) factors, but argue that the trial court did not specify those factors.  Defendants also argue plaintiff's affidavit of services did not address all the factors enumerated by RPC 1.5(a) requiring remand.  We disagree.

An appellate court accords significant deference to the trial judge's determinations of fee awards and will "disturb[] [those awards] only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard–Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).  The trial court correctly found the parties' agreements provided for attorney's fees and costs in the event of a

16

breach. It calculated the lodestar and multiplied it by a reasonable hourly rate. Litton, 200 N.J. at 386 (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). It reviewed plaintiff's counsel's affidavit of services addressing the factors enumerated by RPC 1.5(a). The trial court took pains to address each objection raised by defendants and adjusted the fees where it found it was appropriate. We discern no abuse of discretion and affirm the award of counsel fees and costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0142-22